RUSHING *v.* WATER VALLEY COCA-COLA BOTTLING Co., et al.

No. 40579 December 16, 1957 98 So. 2d 870

*John P. Horan,* Water Valley, for appellant.

*Lipscomb, Ray & Barksdale,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by Mrs. Helen Bernice Rushing, surviving widow, and Linda Carol Rushing, minor child of James Herman Rushing, deceased, from a judgment of the Circuit Court of Yalobusha County affirming an order of the Mississippi Workmen's Compensation Commission dismissing the claim of the appellants against the Water Valley Coca Cola Bottling Company and its insurance carrier for death benefits under the Mississippi Workmen's Compensation Act on account of the death of the decedent, who was an employee of the Water Valley Coca Cola Bottling Company at the time of his death on February 6, 1956.

The record shows that the decedent was employed by the Water Valley Coca Cola Bottling Company as a route man, and that his average weekly wage was $35. He was 43 years of age at the time of his death. The evidence showed that during the morning of February 6, 1956, he pursued his normal activities as a route man, had his lunch at the usual lunch hour, and returned to the plant about 1:00 o'clock P. M. He sold three cases of coca cola to a customer, and then went back to the rear end of the building and moved several cases of bottle crowns from one side of "a float", or small platform, to the other, and started to get a broom or a mop, when he was seized with a pain in his chest. He left the bottling plant to go to see Dr. Dalton Earl Spears, whose clinic was located across the street from the plant. He stopped at Bennie Appleton's store, next door to the Coca Cola plant, and bought a box of cough drops, and then went to the doctor's office, where he died a few minutes later.

Mrs. Frances Blackwood, the nurse in charge of Dr. Spears' clinic, testified that Rushing came to the office about 1:15 P. M. Dr. Spears was out on a call at that

time, and she undertook to contact him by telephone but was unable to do so. She took Rushing's temperature, respiration and blood pressure immediately. The blood pressure was 150 over 90, respiration normal, and pulse normal, but the deceased looked pale and she knew that he was weak, although he did not complain. The doctor arrived a few minutes later. Dr. Spears testified that Rushing was moribund at the time he saw him and expired before he had time to examine him. The doctor stated that the nurse had already taken the patient's pressure show?'' His answer was, ''It was 178—actual-elevated.'' The doctor was asked, ''What did his blood pressure show?'' His answer waws, ''It was 178—actually, I have forgotten what the lower reading was.'' He was asked whether that would be high or low for a man of Rushing's age. His answer was, ''That would be high.'' The doctor stated that from his observation the cause of Rushing's death was a coronary occlusion or a heart attack. The doctor was asked by the attorney-referee whether he had ever had occasion to examine Mr. Rushing prior to the time he was in his office. His answer was, ''Yes, sir, I had, but it was on an entirely unrelated condition.'' The doctor stated that he had no knowledge whatever of Rushing's previous history.

The testimony of the claimants' lay witnesses was substantially as follows: Bennie Appleton testified that Rushing came into his place of business about five minutes before he died and bought a box of cough drops and then left and went to the doctor's office. Rushing made no complaint to him, but he knew that there was something wrong with him at that time. Jack Heflin, who worked at the bottling plant, testified that Rushing worked during the morning, and came back after lunch and waited on a customer, and loaded three cases of coca cola on a vehicle for the customer. Rushing then went to the rear end of the plant, where there were about eight boxes of bottle crowns on a float, which had to be

moved. The boxes weighed about 48 pounds each. Rushing came back in a little while and told Heflin that he had a hurting in his chest, and that he needed to go to see Dr. Spears. Heflin told him to go ahead. On cross-examination Heflin stated that he did not see Rushing move any of the cases of crowns, ''but he was back there fooling with them,'' and after he left Heflin saw that the cases had been moved from one side of the float to the other. Rushing had said nothing about feeling bad until just before he went to the doctor's office.

Jimmie Gillum, who worked at the Coca Cola Bottling Plant, testified that he worked on one truck, and Rushing on another; that after lunch, while he was unloading his truck, Rushing came back to the rear end of the building to move the bottle crowns; that Rushing moved a few of the boxes of the crowns from one side of the float and stacked them up on the other side, and then started over to get a broom and mop, but he stopped and said, ''I got a hurting in my chest.'' Rushing then went to the front of the building, but came back and told Gillum to carry the float to the front. Rushing stated that he was going to Dr. Spears' office to see if he could get some relief.

The only witness for the employer and its insurance carrier, Willie Owen, testified that he was 25 years of age, and that he worked at the coca cola plant with Mr. Rushing. He stated that he worked as a helper on the truck, took the bottles off of the truck and into the places of business, and put the empties back on the truck. Mr. Rushing as route man just wrote up the tickets and collected the money. Owen was asked whether Rushing handled any of the cases of coca cola the day he died. His answer was, ''No, sir, just those cartons,'' home cartons of six bottles each. Rushing set them down by the stand on the floor. They were empty. He did no other work on the day of his death except collect the money and make the tickets. Owen stated that the hard work on the truck was his job. He stated that Mr. Rush-

ing said nothing to him about being sick during the morning. On cross-examination Owen stated that he and Rushing left the coca cola plant about 7:30 A. M., and got back between 11:00 and 11:30. He did not know how many empty cartons Mr. Rushing picked up that afternoon. All he knew was what happened before dinner.

The attorney-referee found that Rushing's death was caused by a heart attack, probably coronary occlusion, and that the heart attack was neither an accident nor related to the employment of the deceased by the bottling company, and the attorney-referee entered an order dismissing the claim. The full commission on review affirmed the order of the attorney-referee.

The only point argued by the appellants' attorney as ground for reversal of the judgment of the lower court is that the attorney-referee, the commission and the circuit court erred in their finding that Rushing's heart attack was neither accidental nor related to his employment by the bottling company.

The appellants' attorney argues that the evidence offered on behalf of the claimants showed that the work which Rushing was doing required considerable exertion, and that he suffered chest pains while stacking the several cases of crowns on the float; that the medical examination made a few minutes later showed that he had suffered a heart attack and that he had high blood pressure at the time the examination was made; and that the above mentioned evidence was sufficient to support a finding that there was a causal connection between the heart attack and the work that Rushing was engaged in at the time he suffered the chest pains. The appellants' attorney cites in support of his contention Pearson v. Dixie Electric Power Assn., 219 Miss. 884, 70 So. 2d 6; Southern Engineering & Electric Co. v. Chester, 226 Miss. 136, 83 So. 2d 811; Sunnyland Contracting Co. Inc. v. Davis,

221 Miss. 744, 74 So. 2d 858; Thornbrough Well Servicing Co. v. Brown, 223 Miss. 78 So. 2d 159.

But in each of those cases there was medical evidence to support a finding that the work in which the employee was engaged at the time he had the heart attack aggravated, accelerated or contributed to his injury.

In Pearson v. Dixie Electric Power Association, supra, there was evidence in the record to show that the decedent had a pre-existing heart ailment, and there was medical evidence to the effect that the work which the decedent was doing at the time that he had the heart attack contributed to the heart attack. In Sunnyland Contracting Co., Inc., v. Davis, supra, there was evidence in the record which showed that the decedent had a pre-existing labile type of high blood pressure which would have its effect on the heart, throwing an extra load on the heart; and that he had been assisting in lifting heavy planks a short time before he was found dead on the job; and Dr. Weems was of the opinion that in all probability Davis had suffered some type of heart attack caused by a strain.

In Southern Engineering and Electric Company v. Chester, supra, lay witnesses testified to prior complaints of the employee in regard to pains in his chest; and the attorney-referee, the commission and the circuit court adopted the testimony of Drs. Corbin and Le Beckie to the effect that the work of the employee aggravated, contributed to and precipitated an attack of coronary thrombosis from which the employee died. In Thornbrough Well Servicing Co. v. Brown, supra, the record showed that the claimant suffered a heart attack after eight days of work totaling about 72 hours, which work involved lifting and stacking pipes weighing about 100 pounds each. Four physicians testified. One testified that the work and strain of the appellee's job was probably a contributing cause of the heart attack; two thought there was no relation between the appellee's job and the heart

attack; the other had no opinion. The attorney-referee found that the claimant was entitled to compensation, and his finding was affirmed by the commission and the circuit court. In affirming the judgment of the circuit court in this case, this Court said: "The conflict in the testimony was a typical one which made an issue for the commission as a trier of the facts. In heart cases such as this, the factual issue of causal relationship is usually one for the medical experts and the triers of the facts."

The appellants' attorney also cites in support of his contention that the judgment of the lower court should be reversed, Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356, and Dixie Pine Products Co. v. Bryant, 228 Miss. 595, 89 So. 2d 589. But neither of those cases involved a heart attack; and in each of those cases there was medical testimony to support the finding that the work which the employee was performing at the time of the injury had aggravated or accelerated a pre-existing disease or infirmity, or combined with the disease or infirmity to produce the death.

The difficulty with which we are confronted in this case is that there is no proof in the record to show that Rushing's death was causally related to the work that he was performing for the bottling company. There is no proof in the record to show that Rushing had suffered from a pre-existing heart ailment prior to the attack of coronary occlusion which struck him only a few minutes before his death. Dr. Spears expressed no opinion as to any causal relation between the work that Rushing was engaged in and the heart attack. Dr. Spears testified that he had no knowledge of Rushing's prior history, and there is no medical testimony whatever in the record to show that the coronary occlusion, which produced his death, was precipitated by the work that he was engaged in performing when he suffered the attack. There is no evidence in the record to show that Rushing suffered from hypertension prior to the heart attack which pro-

duced his death, or, if he had high blood pressure prior to the heart attack, that such blood pressure was sufficient to precipitate the heart attack.

In discussing the meaning of the phrase "arising out of the employment," as that phrase is used in Workmen's Compensation statutes, the text writer in 58 Am. Jur., pp. 718, 719, Workmen's Compensation, par. 211, says: "While the interpretation of the phrase 'arising out of the employment.' as used in workmen's compensation acts to define the injuries compensable thereunder, has given rise to many questions of considerable difficulty, as to which the decisions are not harmonious, there is general agreement upon the proposition that an injury arises out of an employment when but only where there is a causal connection between such injury and the conditions under which the work is required to be performed; it is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work."

 ██ This Court has held that it is not necessary in a case of this kind that the claimant show that the exertion which occurred immediately prior to a heart attack was in itself unusual or beyond the routine of the employment. If a causal relationship is shown, the exertion may be usual and customary, and still satisfy the requirement that the injury be accidental and arise out of the employment. Schilling v. Mississippi State Forestry Commission, 226 Miss. 858, 85 So. 2d 562. ██ But there must be proof of causal connection between the heart attack and the employee's work. In Ingalls Shipbuilding Corporation v. Howell, 221 Miss. 824, 74 So. 2d 863, the Court said: "This case hinges on the question of causal connection; if Howell's work caused the heart attack or in any manner aggravated, accelerated or contributed to the attack, then Howell's heart attack is compensable. Pearson v. Dixie Electric Power Association, 215 Miss. 884, 70 So. 2d 6. But claimant must prove facts

prerequisite to recovery; and causal connection is one of such facts. * * * Numerous cases have been cited by appellee, but we know of no case where this Court has held that a heart attack is compensable in the absence of proof of casual connection between the heart attack and the employee's work.''

Larson, in his Workmen's Compensation Law, Vol. 1, p. 564, par. 38.83, in discussing the basic problem, medical causation, in heart cases, says: ''There must still be an unexepcted result, and there must still be an exertion —some exertion—capable medically of causing the collapse. This can by no means be taken for granted. * * * The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did not happen by chance; it happened by the inexorable march of the disease. * * * As the unusual exertion requirement becomes more and more weakened by exceptions and interpretations, the burden of keeping this class of cases within proper bounds falls squarely on the shoulders of the expert medical witness and the expert trier of fact.''

██ █ Where, as in this case, it is shown that the employee has died from a heart attack, in order to make out a prima facie case, the claimants must show, in addition to the heart ailment, that the work aggravated, eccelerated or precipitated the heart attack, and that the two conditions together caused the death of the deceased. The sole question here is whether the claimants carried the burden of showing that Rushing's exertion in and about the duties of his employment contributed to or precipitated the heart attack which resulted in his death. ██ █ The commission, which is the fact-finding tribunal in compensation cases, found that the evidence was

not sufficient to show that Rushing's exertion in moving the cases of crowns from one side of the float to the other contributed to the heart attack. The commission did not have the benefit of medical opinion in arriving at their decision on the point, and in the absence of such medical opinion, we think that it cannot be said that the commission was manifestly wrong in denying the claim.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Ethridge* and *Gillespie, JJ.,* concur.