GOODNITE v. FARM EQUIPMENT COMPANY

No. 40825 June 9, 1958 103 So. 2d 391

November 10, 1958 106 So. 2d 383

December 1, 1958 . 106 So. 2d 683

*Lomax B. Lamb, Jr.,* Marks, for appellant.

*Brewer & Brewer,* Clarksdale, for appellees.

KYLE, J.

This case is before us on appeal by Mrs. Josephine Goodnite, surviving widow of Samuel Vincent Goodnite, deceased, an employee of the Farm Equipment Company, of Tunica, Mississippi, from a judgment of the Circuit Court of Tunica County, affirming an order of the attorney-referee and the Workmen's Compensation Commission denying the claim of the appellant and her fifteen-year old son against the Farm Equipment Company for death benefits under the Workmen's Compensation Law on account of the death of Samuel Vincent Goodnite who, at the time of his alleged injury and death, was an employee of the Farm Equipment Company.

The record shows that Samuel Vincent Goodnite, who was 41 years of age at the time of his death, was employed by the Farm Equipment Company as a general mechanic in its repair shop at Tunica sometime during the month of January 1956; that he had previously worked as a plantation mechanic, and his general health was believed to be good until September 1956; and that he ordinarily worked about 55 hours a week. Early in September Goodnite complained to his wife about not feeling

well, and about having headaches. He complained at times of loss of breath and of a burning sensation in the chest. About three weeks before his death, as he re-entered the shop after the noon hour, he was seen to place his hands across his chest, indicating physical discomfort, and to lean upon a truck bed to rest; and he stated to his fellow workmen at that time that he had experienced a burning sensation in his chest and a shortness of breath, and that he had had similar attacks before. After resting a few minutes he resumed his duties in the shop.

On September 10, 1956, Goodnite was given a medical examination by Dr. Richard Denton, a local physician engaged in the general practice of medicine. He stated to Dr. Denton at that time he had recently experienced a shortness of breath and tightness in his chest. The doctor found a possible slight systolic murmur, and there was evidence of a fatigue syndrome and a tension syndrome. The patient appeared to be of a nervous type. A chest X-ray was taken, and also a cardiogram. The chest plate was normal. The cardiogram was examined by a heart specialist, who reported that it was normal. The patient was again examined by Dr. Denton on September 14, 1956, and at that time Dr. Denton found no new symptoms of illness, but advised the patient that he should slow down his activities as long as he had shortness of breath. A tranquilizing drug was prescribed, but no specific cardiovascular medicines.

Goodnite worked five hours on the job on Saturday morning, September 22; and on Sunday, September 23, he went dove hunting with two companions. He suffered at least two attacks of shortness of breath and burning sensations in his chest while in the field, and on each occasion he clapped his hands on his chest and rested a few minutes before proceeding further. One time he leaned against the automobile to rest, the other time he sat for a few minutes. He worked ten hours on Monday, September 24, and reported for work the following morn-

ing a few minutes before seven o'clock. Shortly after he reported for work the shop foreman directed him to go to a nearby farm to time a cotton picker. Before leaving the shop Goodnite placed a tachometer, or timing device, weighing about 5 pounds, and a tray of tools, weighing about 10 or 12 pounds, in his employer's pickup truck. He then left the shop in the pickup truck and drove toward the farm where he was to repair the cotton picker. He had driven southwardly a distance of approximately one-half mile, when he suffered the heart attack which resulted in death almost immediately. One eyewitness testified that Goodnite passed a tractor headed northwardly with two large trailers attached and that "just before he got to the trailer he kinda swerved a little, and then just as he passed the trailer, got behind them, he just cut right behind the trailers, just barely missed them." After the tractor and trailers had passed, the truck ran off the street, to the left across a small ditch on to a railroad track and then down again into the ditch, where it came to a stop. Goodnite slumped over on the seat. He was breathing when a passerby came to his aid, but did not speak. He was rushed to a local hospital, but was dead on arrival. No autopsy was performed. Dr. Denton signed the death certificate which showed as the cause of death "possible coronary thrombosis."

There is no conflict in the testimony concerning the facts stated above.

Dr. Denton, who was called to testify as a witness for the claimants, testified that he examined Goodnite on September 10, 1956, and saw him again professionally on September 14. At the time he made his examinations he did not feel that Goodnite had a serious coronary condition. However, in retrospect and after the death of Goodnite, the doctor felt that Goodnite did have a serious coronary condition prior to his death. Dr. Denton testified that in his opinion Goodnite's activities during the morning *could have* brought on or contributed to the heart attack which produced death. He was asked wheth-

er it was reasonably probable that his activities did bring on or contribute to his death. His answer was, "I don't know."

Two other doctors testified as expert witnesses. Neither of them was personally acquainted with Goodnite during his lifetime, and neither of them had any personal knowledge of Goodnite's condition immediately prior to his death. The claimants offered in evidence the deposition of Dr. Purvis Milnor, Jr., of Memphis, a recognized specialist in cardiology. The defendants offered in evidence the testimony of Dr. Guy H. Adams, of Atlanta, who specialized in the field of internal medicine.

Dr. Milnor, in answer to hypothetical questions, stated that he was of the opinion that Goodnite was suffering from an arterios clerotic heart disease, at least from September 10, 1956, until the time of his death. He did not think that his death was due to coronary thrombosis. He stated that thrombosis was not often found in the age group to which Goodnite belonged. The doctor stated that he was of the opinion that Goodnite's death was a cardiac death.

The doctor was then asked the following questions, and gave the following answers:

"Q Doctor, what, in your opinion, was the reasonably probable connection of Goodnite's employment with the implement company and the work he performed for the company and his death? A Let me bring myself back to the question you asked me, the hypothetical question. According to the history, his death occurred on the 25th, did it not? Q Yes. A He had had, in the early part of September, some chest pain for which he went to see his doctor, and the diagnosis of a fatigue syndrome and a tension syndrome was made, and subsequently, despite several more pretty severe pains, I believe according to the history, he continued on with his activities with no subsequent letup; I would like to answer that question in this way, if I may. The accepted

treatment for a cardiac condition, whether it be an un-diagnosed myocardiac infarction or angina pectoris, the accepted treatment is rest in bed for a period of time, and particularly the avoidance of any activity whatso-ever which requires physical or mental strain. Now, the fact that this patient continued to work, that would be expected to be harmful to his health. The exact trig-ger mechanism which precipitates certain of these epi-sodes, and which result in death, are often indetermin-able. Sometimes one dies with a particular episode, and sometimes one does not. We have the feeling that these patients should not—for instance when the diagnosis of a heart condition of some variety is made, we like im-mediately to take these patients off of anything which produces any physical or mental strain whatsoever. The question arises frequently in people who work around here, we do not like to see them picking up anything. Another thing which we stress is, and especially in these cases of cardiac patients, the avoidance of driving a mo-tor vehicle. I think one reason for the difficulty we have with driving is * * * the actual physical exertion of driving, that enters into it, but it is actually the mental strain associated with driving which causes the most trouble. * * * We make it a rule in handling these pati-ents, and we handle many cardiac patients, not to let them drive a motor vehicle. Frequently, we will let these cardiac patients go back to work for a fairly good period of time, a matter of weeks and sometimes months, we let them go back to work before we let them drive a car or motor vehicle, and it is not because of the probability or possibility of having a heart attack while driving a mo-tor vehicle, that is not the main reason we do not allow these patients to drive an automobile, but it is the mental strain brought about under these modern high speed conditions. This is something we like to see these cardiac patients avoid.''

Dr. Milnor was asked whether the activities of Good-nite on the morning of his death, in the performance of

his duties in carrying out his employment, would contribute to the precipitation of any cardiac attack he may have suffered. His answer was, "You have a combination of circumstances, which we particularly do not like. We feel if a person eats and then becomes active immediately, there are harmful effects from his activities on the heart. Those activities magnify the effects on his heart, and that certainly would appear to be the situation that existed. * * * The best we can say is this, the fellow should not have been working, he should have been at home in bed or at the most, at home sitting in a chair. He simply should not have been working. Therefore, anything he did in the nature of work was presumably harmful to him." The doctor was then asked the direct question, whether in his opinion, it was reasonably probable that the work Goodnite did as a mechanic contributed in any way to, or caused his death, or aggravated any condition which precipitated his death. In answer to that question the doctor said, "I believe I have already answered that, but I will make this further statement; what he was doing, according to the hypothetical question you asked me, was diametrically opposed to the way we treat these patients." The doctor stated that it was a well recognized fact that a number of individuals will have a heart disease which is not picked up by a cardiogram, and the fact that there was a negative cardiogram report had no significance.

Dr. Guy H. Adams, testifying for the employer and its insurance carrier, testified that he thought Goodnite died of coronary insufficiency; that he thought Goodnite had angina pectoris for the period of time that his symptoms were brought out in the hypothetical question; that in his opinion Goodnite developed a coronary occlusion while he was driving the truck, and that his death was more or less instantaneous. He thought there was no causal relationship between Goodnite's employment or activity during the morning and his death. The doc-

tor was asked what the treatment was for angine pectoris. His answer was, "We first reassure the patient and then we do a cardiogram, and then we put him on some type of sedative or tranquilizing drug and we advise him not to overexert himself, not to become mentally disturbed, and not to worry or become emotionally upset." He stated that he usually let the patient go ahead with his usual activities, provided it was not too exerting. The doctor stated that he did not believe that the driving of the pickup truck was enough of a mental or physical strain to aggravate Goodnite's condition, to "aggravate or cause the coronary insufficiency. His activity during the morning was not such exertion as would aggravate or precipitate a heart attack."

The attorney-referee, in his opinion, stated that the only issue involved in the appellant's claim was whether or not Goodnite's employment was causally related to his death; that it would appear not to be unreasonable to expect the testimony of trained medical specialists and practitioners to afford the best insight into the determination of that issue; and that two trained specialists in the medical profession had taken diametrically opposing views, and a third trained and competent medical man had stated that he did not know. The attorney-referee stated that the claimants were required to prove all facts requisite to recovery; and that in his opinion the claimants had failed to meet the burden of proof imposed upon them. The attorney-referee therefore found that Goodnite's death did not arise out of his employment with the Farm Equipment Company; and the attorney-referee entered an order denying the claim of the appellant and the minor child for death benefits. The commission affirmed the order of the attorney-referee.

We think the attorney-referee and the commission were manifestly wrong in their finding that the claimants had failed to meet the burden imposed upon them to prove all facts requisite to recovery. We rec-

ognize and reaffirm the well settled rule which has been stated many times in our own decisions, that it is not the province of the appellate court to pass on the weight of the evidence where the same is conflicting in substantial particulars and to determine where the preponderance thereof lies. But in the instant case, we think the claimant's proof was sufficient to establish their right to recover death benefits, and that the attorney-referee and the commission erred in denying the claim.

In discussing the degree of proof required of the claimant in a case of this kind. Dunn, in his book on Mississippi Workmen's Compensation, par. 164, says:

"To meet the burden, as a matter of law, it is said that the rational mind must be able to trace the effect to some cause upon which an award may be based. Direct evidence is not required. Circumstantial evidence may sustain the burden, but in such cases, a state of facts, conditions or circumstances must be shown from which the affirmative of the issue may be reasonably inferred."

We think the facts, conditions and circumstances testified to by the lay witnesses in this case, along with the medical testimony of Dr. Milnor, were sufficient to meet the burden of proof required of the claimants in this case.

▮▮▮ Goodnite was shown to have been suffering from what appears to have been a heart ailment for a period of several weeks prior to September 25, 1956. He suffered the fatal attack while he was actively engaged in the performance of his duties as an employee of the equipment company. He was executing the assignment given him by the shop foreman. He was driving a pickup truck which was owned by his employer, and had with him a timing device and the necessary tools for the repair of the cotton picker. He saw approaching from the opposite direction a tractor, with two trailers attached to it, and swerved his pickup truck to make room for the tractor and trailers to pass, and came very close to the trailers as he cut back in behind them. It was under

these circumstances that he was stricken with the heart attack which produced his death. He was doing for his employer the very things that Dr. Milnor testified that he "would like to see these cardiac patients avoid."

In Shelby Mutual Casualty Co. v. Huff, 87 Ga. App. 463, 465, 74 S. E. 2d 251, 253, the Court said: "Where it is shown that the cause of death is cerebral hemorrhage or some other disease with which exertion on the part of the employee as shown by the evidence may be expected to concur in precipitating an attack, and where such claimant, so suffering, exerts himself in the course of his employment, these facts are sufficient, under the above ruling, to authorize an award in the claimant's favor. Both the disease and the exertion must be shown, however."

In the recent case of Wiltcher v. National Transport Company, 283 App. Div. 977, 130 N. Y. S. 2d 596, the Court held that the evidence in that case sustained a finding that the heart attack suffered by a taxicab driver had resulted from strain and emotional excitement caused by his effort to avoid a collision by another taxicab in the course of his employment.

In Pearson v. Dixie Electric Power Assn., 219 Miss. 884, 70 So. 2d 6, this Court said: "Where an employee is found dead at his post of labor without direct evidence as to the manner of his death an inference may arise of an accident springing out of and in the course of his employment; and when such prima facie case is thus made out, the burden shifts to the employer to produce evidence to overthrow such a prima facie case."

It is true that Dr. Adams testified that he thought there was no causal relationship between Goodnite's employment and his death, and that he did not believe that the driving of the pickup truck was enough of a mental or physical strain to aggravate Goodnite's condition. But we think that Dr. Adams' testimony standing by itself was insufficient to overcome the testimony of Dr.

Milnor, coupled with the uncontradicted testimony of the lay witnesses relating to Goodnite's very recent complaints of shortness of breath and chest pains and his physical activities immediately preceding the fatal heart attack.

This case is entirely unlike the case of Rushing v. Water Valley Coca Cola Bottling Company et al., 232 Miss. 338, 98 So. 2d 870, which is cited in the appellees' brief in support of the judgment of the lower court. In that case there was no proof in the record to show that Rushing had suffered from a preexisting heart ailment prior to the attack of coronary occulsion which struck him only a few minutes before his death; and there was no medical testimony whatever to show that the coronary occlusion, which produced his death, was precipitated by the work that he was performing when he suffered the heart attack.

In this case, Goodnite, in the opinion of each of the three doctors who testified, had a preexisting heart ailment, and had suffered such ailment at least from September 10, 1956, until his death on September 25, 1956; and the reasonable inference to be drawn from the testimony of Dr. Milnor is that the heart attack which Goodnite suffered immediately after he passed the tractor, with the two trailers attached, and just as he cut in behind the trailers and barely missed striking them, was probably precipitated by the work that he was engaged in performing.

For the reasons stated above the judgment of the lower court is reversed and a judgment rendered here against the appellees as to liability, and the cause remanded for further proceedings in accordance with the views hereinabove stated.

Reversed and judgment rendered, and cause remanded.

*McGehee, C. J.*, and *Hall, Lee* and *Holmes, JJ.*, concur.

## ON MOTION FOR ALLOWANCE OF ATTORNEY'S FEE

July 3, 1958 104 So. 2d 298

The judgment of the Circuit Court appealed from in this cause, affirming an order of the Workmen's Compensation Commission denying the claim of the appellant and her 15-year old son against the Farm Equipment Company and its insurance carrier, appellees, for death benefits under the Workmen's Compensation law on account of the death of the appellant's husband, Samuel Vincent Goodnite, was reversed by this Court on June 9, 1958, and a judgment was rendered here in favor of the claimants against the above named appellees as to liability and the cause remanded for the award of death benefits. See Goodnite v. Farm Equipment Company, et al., (Miss.), 103 So. 2d 391.

Since the rendition of the above mentioned judgment of this Court the appellant and her attorney have filed a motion asking for the approval and allowance of an attorney's fee to be paid to the appellant's attorney for legal services rendered in this cause in the sum of 33⅓ per cent of all death benefits accrued prior to the order of allowance of said attorney's fee by the court, plus a sum of money equal to a partial lump sum settlement of 33⅓ per cent of the present value of all future death benefits, to be computed and paid as hereinafter provided.

The motion for the approval and allowance of said attorney's fee is sustained. And the attorney for the appellant is hereby allowed, as full compensation for all services rendered by him in this cause, a sum of money equal to 3⅓ per cent of all death benefits which have accrued prior to the entry of the order of allowance of said death benefits in this cause, plus a sum of money equal to a partial lump sum settlement of 33⅓ per cent of the present value of all future compensation payments,

said partial lump sum settlement to be determined and computed as provided in Section 6998-19 (j), Mississippi Code of 1942, and to be deducted from payments last to become due the claimants. Provided, however, that the death benefits to be taken into account in computing the amount of said attorney's fee shall not include the lump sum payment of $100 provided for by the statute of the funeral expenses referred to in the appellant's motion.

Motion sustained and attorney's fee fixed at 33⅓ per cent.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.

## ON MOTION TO CORRECT JUDGMENT SO AS TO PROVIDE FOR THE PAYMENT OF INTEREST

In an opinion rendered in this cause on June 9, 1958, the Court reversed the judgment of the lower court and the order of the Workmen's Compensation Commission denying the claim of the appellant Mrs. Josephine Goodnite and her fifteen-year old son against the Farm Equipment Company for death benefits under the Workmen's Compensation Act, on account of the death of Samuel Vincent Goodnite, deceased; and a judgment was entered here awarding death benefits to the claimants and remanding the cause to the commission for the enforcement of the award. See Goodnite v. Farm Equipment Company (Miss. 1958), 103 So. 2d 391. A suggestion of error was filed by the appellees on June 12, 1958, and was overruled by this Court on July 3, 1958. Nothing was said in the opinion rendered on June 9, 1958, or in the judgment entered upon the minutes of the Court, concerning the allowance of interest on the past due installments of death benefits which had accrued prior to the date of the rendition of judgment awarding such death benefits.

On August 30, 1958, the appellant filed a motion to correct the judgment rendered on June 9, 1958, so as to provide for the allowance of interest on each weekly in-

stallment of death benefits which had accrued prior to the rendition of the judgment, and so as to provide for the allowance of interest on the lump sum payment of $100 to be made to the widow and the $350 funeral expenses provided for in Section 6998-13, paragraphs (a) and (b), Code of 1942, Recompiled. Proper notice of the filing of the motion was given to opposing counsel; and the appellees' attorneys have filed an answer to the motion and a reply brief. In their reply brief the appellees' attorneys say that there is no legal basis for the allowance of interest on the installments of death benefits which accrued prior to the rendition of the judgment of this Court awarding such death benefits; that no judgment awarding compensation to the claimants had been rendered, either by the commission or by the circuit court, prior to the rendition of the judgment of this Court on June 9, 1958; that interest is entirely statutory; and that the Mississippi Workmen's Compensation Act contains no provision relating to the payment of interest on past due installments of death benefits prior to the rendition of a judgment awarding such benefits to the claimants.

 But we think that the employer and its insurance carrier are liable for the payment of interest on each weekly installment of the award from its due date until paid. This Court was held in numerous cases that, when a claim is controverted and an award of death benefits is made by the commission and affirmed by the court on appeal, interest should be allowed on each weekly installment of the award at the rate of six per cent per annum from its due date until paid. See J. & B. Mfg. Co. v. Cochran, 216 Miss. 336, 62 So. 2d 378; M. T. Reed Construction Co. v. Martin, 215 Miss. 472, 63 So. 2d 528; LaDew, et al. v. LaBorde, 216 Miss. 598, 63 So. 2d 825; Sunnyland Contracting Co., Inc., v. Davis, 221 Miss. 744, 74 So. 2d 858, 75 So. 2d 638, 75 So. 2d 923; Russell v. Southeastern Utilities Service Co. (Miss. 1957), 92 So.

2d 877; Lee v Haltom Lbr. Co. (Miss. 1957), 93 So. 2d 641; and Dependents of Harris v. Suggs, (Miss. 1958), 102 So. 2d 696.

Section 6998-26, which provides for a court review of the order of the commission upon appeal by either party to the controversy, expressly provides that, if upon review prejudicial error be found, the judgment or award of the commission shall be reversed and the court shall enter such judgment or award as the commission should have entered. In the case that we have here, this Court found prejudicial error, and reversed the judgment of the circuit court and the order of the commission and entered a judgment in favor of the claimants. If an award had been made by the commission in favor of the claimants on the original hearing, under the rule laid down in the cases cited above, each weekly installment of death benefits then due and unpaid would have borne interest from its due date until paid at the rate of six per cent per annum. There is no sound reason why interest should not be allowed on each such weekly installment of death benefits from the due date thereof until paid in a case where the award is made by the commission pursuant to a judgment of the court, as well as in a case where the award is made by the commission on the original hearing.

Section 6998-19, Code of 1942, Recompiled, provides that:

"(a) Compensation under this act shall be paid periodically, promptly, in the usual manner, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

"(b) The first installment of compensation shall become due on the fourteenth day after the employer has notice, as provided in Section 12 (Sec. 6998-18), of the injury or death, on which date all compensation then due shall be paid. Thereafter, comp-

ensation shall be paid in installments, semi-monthly, except where the commission determines that payment in installments should be made monthly or at some other period.''

██ Interest in a case of this kind is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue. Miller, State Revenue Agent, v. Henry, Insurance Commissioner, 139 Miss. 651, 103 So. 203; Rubel, et al., Executors, v. Rubel, 221 Miss. 848, 75 So. 2d 59.

In other jurisdictions, in which workmen's compensation acts have no provision with respect to interest, the general interest statute has been applied. See Sunny Point Packing Co. v. Faigh (1933), 63 F. 2d 921, and cases cited.

Section 36, Code of 1942, provides that: ''The legal rate of interest on all notes, accounts and contracts shall be six per cent per annum; but contracts may be made, in writing, for a payment of a rate of interest as great as eight per centum per annum. * * * .''

Section 6998-19, Code of 1942, which requires that compensation be paid ''periodically, promptly, in the usual manner, and directly to the person entitled thereto,'' creates a liability upon the employer immediately upon the death of the employee for payment according to the terms of the statute and a right in the beneficiary or beneficiaries to that payment. The liability of the employer is of the nature of a debt, and the right of the beneficiary is that of a creditor in that debt. The liability is as definitely fixed as to amount, time and binding force, as if the employer had executed its notes due for the payment prescribed. The employer has the right under the statute to contest the matter of those payments before the commission and in the courts. If it can show that the injury or death does not come within the law, it escapes all payment and all liability for all payment; but when it contests such payments, and the courts decide

that the injury or death comes within the provisions of the law, the judgment relates by the force of the statute to the time prescribed by the statute. Interest is due from the date of the maturity of each unpaid payment on the sum due. See Consolidated Underwriters v. Saxon (Com. of Appeals of Texas, 1924), 265 S. W. 143.

In this case interest at the rate of six per cent per annum was due the claimants on the unpaid installments from the due date of each installment, as fixed by the statute, to the date of payment. The motion to correct judgment, so as to provide that each weekly installment of the award of death benefits shall bear interest at the rate of six per cent per annum from its due date until paid, is therefore sustained, and the attorneys' fee heretofore allowed shall include 33-1/3% of the amount of interest thus accured.

As to that part of the motion which relates to the allowance of interest on the lump sum payment of $100 to the widow and the claim for funeral expenses, the motion itself shows that, by agreement, the carrier has made the lump sum payment of $100 and has paid the funeral expenses without any order of the commission. We therefore pretermit any further discussion of the allowance of interest on those two items, and the motion as to the allowance of interest on those items is overruled.

Motion to correct judgment so as to provide for payment of interest sustained in part and overruled in part.

All Justices concur.

## ON SUGGESTION OF ERROR

HALL, J.

November 10, 1958, we sustained a motion to provide for the payment of interest at the legal rate of six percent on each installment of compensation from its due date, and a very thorough and comprehensive opinion was written citing numerous authorities in support of

our position. We passed upon this motion before the entire Court en banc because of a conflict in our prior decisions, and we particularly then had before us the opinion in the case of Mrs. Nola Poole v. R. F. Learned & Sons, et al., 105 So. 2d 162, which had been decided on September 22, 1958, and in which the Court allowed attorneys' fees and overruled a motion for five percent statutory damages and ten percent penalties. In that case the Court inadvertently limited the recovery of interest on compensation payments so that the same should begin only on the date of the original judgment of this Court therein.

At the time we passed upon the motion for interest in this case we had the Poole case before us and were unanimously of the opinion that in the Poole case the interest should have been allowed so as to begin on the due date of each payment of compensation, and that it should not have been limited so as to begin only on the date of the original judgment therein.

The appellees in this case have filed a suggestion of error to our opinion which was handed down on November 10, 1958, and in support of their suggestion of error they rely solely upon what was held in the Poole case. Upon a thorough consideration of the suggestion of error by the entire Court, we are all agreed, including the writer of the opinion in the Poole case, that our decision of November 10, 1958, in this case is correct and should stand, and the suggestion of error is accordingly overruled.

Suggestion of error overruled.

All Justices concur.