CENTRAL ELECTRIC POWER ASSN., et al. *v.* HICKS.

No. 41096 April 6, 1959 110 So. 2d 351

*Young, Daniel & Coker,* Jackson, for appellants.

*Joe P. Barnett,* Carthage, for appellee.

ETHRIDGE, J.

Albert Hicks had been employed by Central Electric Power Association, appellant, for a number of years as a groundman with a maintenance crew. A few minutes after getting off from work on March 20, 1957, he suffered a heart attack and died. His widow, appellee Lottie Hicks, filed her claim for workmen's compensation benefits. The attorney-referee and the Workmen's Compensation Commission denied them. The Circuit Court of Leake County reversed the commission and entered an award.

## I.

It is undisputed that Hicks had a pre-existing heart disease and high blood pressure in a serious form, that is, hypertensive cardiovascular disease. He had been warned against over-exertion. On the night before the day of his death, he complained to his wife of shortness of breath and of having a smothering spell. He went to work at 8 A. M. of March 20, and that day traveled a number of miles in a truck with the other men constituting the maintenance crew. He carried out his regular work, which consisted of heavy physical labor, such as digging with a posthole digger holes over six feet deep in which poles were placed, loading and unloading such poles, transformers and other equipment used in the construction and maintenance of power lines, erecting poles, hanging transformers, stretching wire and other activities.

Around the middle of the morning he complained of discomfort in his chest and purchased some "Tums" for indigestion. He did not eat much lunch, giving most of it to a fellow employee. At about 2 P. M. that afternoon, while he was still working, his heart began to hurt him severely, and continued to do so the rest of the day. The truck on which the crew was transported left the field work around 4 P. M. and returned to the company garage in Carthage at 5 o'clock. A fellow employee testified that on the return trip Hicks seemed to

be in good spirits and was singing and talking. However, shortly after he left work, a few minutes after 5 o'clock, he appeared in the office of his physician, Dr. B. R. Wilson, who had been treating him for hypertension and heart disease for a number of years. Apparently he went directly to Dr. Wilson's office. When he arrived Dr. Wilson said he ''was having a heart attack.'' Hicks died within an hour.

Dr. Wilson was positive that the exertions of Hicks' job that day contributed to and precipitated his heart attack. Dr. W. M. Wood had also treated Hicks for high blood pressure, and was definitely of the opinion that the exertions of his job that day would have aggravated the pre-existing condition and precipitated the heart attack. Both of these doctors treated Hicks for several years before his death, and were familiar with his case.

The only evidence offered by appellants to contradict these undisputed facts, and the testimony of the employee's own physicians, was the testimony of two specialists in cardiology who gave their opinions as to the cause of death on the basis of lengthy hypothetical questions propounded to them. Both of these expert witnesses stated that in their opinion the heavy physical labor Hicks did on the day of his death was not causally related to his heart attack and death. One of them recognized that it was possible for an acute myocardial infarction to take place during unusual physical exertion, but he thought the infarction must occur during the actual exertion itself in order for there to be causal relationship. He conceded that exertion could cause a rise in blood pressure levels, but said this would be only temporary. However, if Hicks had been his patient, he would have cautioned him against heavy physical exertion. After an infarction begins, the treatment is bed rest, and of course if Hicks had a heart attack at 2 P. M. he would have recommended that he cease work and receive treatment.

The other doctor who testified for appellants also took the position that the symptoms of an infarction would occur almost immediately after physical exertion. The apparent fact that Hicks felt in good spirits on the return trip to the garage supported, he thought, his conclusion that the heart attack was not precipitated by his physical labor. But of course if he suspected an impending heart attack, he would prescribe rest; and if he suffered pain at 2 P. M., he would have advised rest at that time. He recognized that a person with this heart condition has a limited capacity for physical labor.

## II.

After careful consideration of the record, we have concluded that the overwhelming weight of the evidence shows that the heavy physical labor which Hicks performed on the day of his death aggravated his preexisting condition and contributed to his heart attack and death. The two doctors who were personally familiar with Hicks' condition, including the one who treated him in the midst of his heart attack, clearly established the causal relationship. It is undisputed that the employee began having a shortness of breath and a smothering feeling on the night before; that he had what he thought was indigestion the next morning; and pains in the cardiac region began at 2 o'clock that afternoon. He had certainly been engaged in heavy physical labor. As soon as Hicks returned to Carthage, he went to Dr. Wilson's office. Dr. Wilson found him in the middle of a heart attack. The abstract testimony of the two doctors for appellants was insufficient to overcome the testimony of Drs. Wilson and Wood, and the uncontradicted evidence of the employee's wife and Dr. Wilson relating to his complaints of the night before and the cardiac pains of the afternoon of his death. Considering this case with reference to the numerous other re-

lated ones we have had in recent years, we think it is a strong case on the issue of causation.

■■■ There are several well-established rules for construing our compensation act, and it appears that the attorney-referee and the commission failed to apply them. The workmen's compensation law should be given a broad and liberal construction, and doubtful cases should be resolved in favor of compensation. National Surety Corporation v. Kemp, 217 Miss. 537, 543, 64 So. 2d 723 (1953). In Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 682-683, 52 So. 2d 634 (1951), it was noted: "All courts are agreed that there should be accorded to the workmen's compensation act a broad and liberal construction and that doubtful cases should be resolved in favor of compensation and that the humane purposes of which these acts seek to serve leave no room for narrow, technical constructions."

In Lindsey v. Ingalls Shipbuilding Corporation, 219 Miss. 437, 447, 68 So. 2d 872 (1954), we again repeated that our laws should be liberally construed in favor of the injured employee, and quoted from Williams Mfg. Co. v. Walker, 206 Ark. 392, 175 S. W. 2d 380 (1943), as follows: "The humanitarian objects of such laws should not in the administration thereof be defeated by over-emphasis on technicalities—by putting form against substance."

In King v. Westinghouse Electric Corp., 92 So. 2d 209, 213 (Miss. 1957), it was said: "As we have pointed out already, the compensation act should be given a broad and liberal construction and . . . doubtful cases should be resolved in favor of compensation."

In W. G. Avery Body Co. v. Hall, 224 Miss. 51, 79 So. 2d 453 (1955), there were two doctors with conflicting views. One of these, a specialist, testified exactly contrary to what appellee's doctors testified in the case at bar, and yet with the conflicting views of these two doctors the Court said: "We think that the overwhelm-

ing weight of the evidence requires a finding that appellee's employment aggravated, accelerated or combined with his pre-existing disease or infirmity to produce the disability and injury to his cardiovascular system resulting from the hypertensive attack. This Court in numerous cases has established the principle that a pre-existing disease or infirmity of an employee does not disqualify a claim if the employment aggravated, accelerated or combined with the disease or infirmity to produce the death or disability for which compensation is sought. Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So. 2d 645 (1952); La Dew v. La Borde, 216 Miss. 598, 63 So. 2d 56, 825 (1953); 1 Larson, Workmen's Compensation Law (1952), Section 12.20. The work must be only a contributing and not the sole cause of the injury. Pearson v. Dixie Electric Power Assn., 219 Miss. 884, 70 So. 2d 6 (1954). Another established rule, of particular importance here, is that it is not necessary to show that the exertion which concurred in precipitating the harm was in itself unusual or beyond the routine of the employment. Provided the causal relation is shown, the exertion may be the usual and customary, and still satisfy the requirements that the injury be accidental and arise out of the employment. Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356 (1953); Pearson v. Dixie Electric Power Assn., supra; 1 Larson, Workmen's Compensation Law, Sections 12.20, 38.30.''

In Goodnite v. Farm Equipment Co., 103 So. 2d 391 (Miss. 1958), there was a conflict between the testimony of different doctors as to whether or not Goodnite's work contributed to his death. The Court said: ''Goodnite was shown to have been suffering from what appears to have been a heart ailment for a period of several weeks prior to September 25, 1956. He suffered the fatal attack while he was actively engaged in the performance of his duties as an employee of the equipment company. He was executing the assignment given him by the shop fore-

man. He was driving a pickup truck which was owned by his employer, and had with him a timing device and the necessary tools for the repair of a cotton picker. He saw approaching from the opposite direction a tractor, with two trailers attached to it, and swerved his pickup truck to make room for the tractor and trailers to pass, and came very close to the trailers as he cut back in behind them. It was under these circumstances that he was stricken with the heart attack which produced his death. He was doing for his employer the very things that Dr. Milnor testified that he 'would like to see these cardiac patients avoid.' . . .

"It is true that Dr. Adams testified that he thought there was no causal relationship between Goodnite's employment and his death, and that he did not believe that the driving of the pickup truck was enough of a mental or physical strain to aggravate Goodnite's condition. But we think that Dr. Adams' testimony standing by itself was insufficient to overcome the testimony of Dr. Milnor, coupled with the uncontradicted testimony of the lay witnesses relating to Goodnite's very recent complaints of shortness of breath and chest pains and his physical activities immediately preceding the fatal heart attack. . . .

"In this case, Goodnite, in the opinion of each of the three doctors who testified, had a pre-existing heart ailment, and had suffered such ailment at least from September 10, 1956, until his death on September 25, 1956; and the reasonable inference to be drawn from the testimony of Dr. Milnor is that the heart attack which Goodnite suffered immediately after he passed the tractor, with the two trailers attached, and just as he cut in behind the trailers and barely missed striking them, was probably precipitated by the work that he was engaged in performing." See Poole v. Learned and Sons, 103 So. 2d 396 (Miss. 1958).

We are repeatedly getting records in workmen's compensation cases where the rules which we have been dis-

cussing herein have not been followed. Because of that failure, we have recently been compelled to reverse a great number of decisions. The substantial evidence rule will be applied only after full consideration of the foregoing principles and rules.

### III.

■■ The general rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial and reasonable evidence in the record to support the commission's findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards and the judicial standards based upon the statute which have been established in a large number of cases in recent years. ■■ These standards always consist of two parts, one defining the type of questions administrative determination of which is binding upon the courts, and another which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. ■■ And questions of fundamental importance are always open to judicial review. 42 Am. Jur., Public Administrative Law, Sec. 206. There must be an application of the pertinent statute in a just and reasonable manner.

■■ Whether an administrative agency applies the legislative standards is an appropriate question for judicial decision. Ibid., Sec. 210. Moreover, the analytical basis of a distinction between reviewable questions of law and non-reviewable questions of fact is often narrow. ■■ Certainly the legal affect of the evidence, and the ultimate conclusions drawn by an administrative tribunal from the facts, as distinguished from its findings of primary, evidentiary, or circumstantial facts, are questions of law, especially where the facts are un-

disputed or the overwhelming evidence reflects them. The question depends then upon application of established legal principles to such facts. Ibid., Sec. 214.

 These observations are pertinent to this Court's review of decisions of the workmen's compensation commission, particularly in heart cases. The statute provides that the court "shall review all questions of law and of fact," and, if prejudicial error is found, the case should be reversed. Miss. Code 1942, Sec. 6998-26. This provision does not authorize a review *de novo,* but it constitutes a clear statement of legislative intent that the courts in reviewing awards or denials of compensation benefits shall examine the record to determine whether the salutary policies and humane purposes of the compensation act are being carried out in particular cases; and further whether the act is receiving the broad and liberal construction which the statute requires, without overemphasis on technicalities and on form against substance.

 In Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 623-624, 638, 48 So. 2d 148, 53 So. 2d 69 (1950), a leading case in this State on the scope of review of orders of the Workmen's Compensation Commission, the Court discussed Code Section 6998-26, and held that it would reverse commission orders based upon findings of fact which are contrary to the great weight of the evidence or based upon an erroneous interpretation of the statute. Substantial evidence is more than a scintilla. It "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Substantial evidence "means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." Consolidated Edison Co. v. NLRB, 305 U. S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938); NLRB v. Columbian Enameling & Stamping Co., 306 U. S. 292, 300, 59 S.

Ct. 501, 505, 83 L. Ed. 660 (1939); 4 Davis, Administrative Law Treatise (1958), Sec. 29.02.

 Section 6998-26 prescribes a review of the commission's decisions on the whole record and not merely on the evidence tending to support the finding. A court cannot "conceivably appraise the substantiality of evidence in a record without looking at the evidence on both sides, for evidence has significance only in a context, not in the abstract." 4 Davis, ibid., Sec. 29.03. As Jaffe states, "evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence." Jaffe, Administrative Procedure Re-examined: The Benjamin Report, 56 Harv. L. Rev. 704, 733 (1943).

 Reading Section 6998-26 and the case-law applying it, particularly Lucedale Veneer Co. v. Rogers, we hold that judicial review of findings of the Commission extends to a determination of whether they are clearly erroneous. And a finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the commission in its findings of fact and in its application of the act. See 4 Davis, ibid., Sec. 29.02. For an exhaustive, analytical discussion of the scope of review, see 4 Davis, Administrative Law Treatise (1958), Secs. 29.01-30.14, pages 114-270.

The importance of these rules is illustrated in the instant case. The employee without dispute had a serious pre-existing heart disease. If the employment contributes to or aggravates the disease, and disability or death results, it is compensable. Hicks on the day of his death engaged in extremely heavy physical labor. It is undisputed that he began having cardiac pains early in the afternoon while he was still working. They continued, he continued working, and, as soon as he got

off from work, he went to Dr. Wilson and was then in the midst of a heart attack, from which he died. The doctors who personally had been treating him for a number of years, including the doctor who was present immediately before his death, gave as their unequivocal opinions that his physical labors that day contributed to his death. The two medical witnesses for the employer denied this, on the theory that exertions would contribute to the infarction only where it immediately followed the exertions. This theory and their testimony was based exclusively on lengthy hypothetical questions. Under these circumstances, we think the commission's findings were unreasonable and clearly erroneous, and could not serve as a basis for denial of compensation. The overwhelming weight of the lay and medical testimony of primary probative value indicated the contrary, and practical and commonsensical logic shows that the man's exertions contributed to his death. See also 42 Am. Jur., Public Administrative Law, Secs. 206-218; 73 C. J. S., Public Administrative Bodies, Secs. 223-225.

Accordingly, the circuit court correctly reversed the commission's denial of compensation and properly awarded benefits to appellee, the employee's widow. So we affirm the judgment of the circuit court, and remand this cause to the Workmen's Compensation Commission for administration of the award to appellee.

Affirmed and remanded to Workmen's Compensation Commission.

*Hall, Lee, Kyle, Holmes* and *Arrington, JJ.*, concur.

GILLESPIE, J., Dissenting:

I disagree with my associates with reluctance. What is here said is done so with deference.

According to my views, the case involves a fundamental question relating to the administration of the Workmen's Compensation Act that transcends individual considerations. What I mean is that we have to all

practical purposes abolished the substantial evidence rule in compensation cases, at least in cases involving heart attacks.

The question in the case before the Commission was whether there was causal connection between the obligations of Hicks' employment and the attack which resulted in his death. This Court is committed to the rule that the exertion does not have to be unusual. This does not mean that causal connection may be taken for granted. Larson, Section 38.83. In the same section of his work, Professor Larson says that, "As the unusual-exertion requirement becomes more and more weakened by exceptions and interpretations, the burden of keeping this class of cases within proper bounds falls squarely on the shoulders of the expert medical witness and the expert triers of fact."

In Mississippi Workmen's Compensation, Dunn, Section 48, et seq., there is a good analysis of our cases involving coronary occlusion with myocardial infarction up to the year 1957 when that work was published. It is there said that, "The result of the typical conflict in medical opinion is that the issue of causal connection in such cases is said to be one for the medical experts and the Commission as triers of the facts, and when there is a conflict of qualified and substantial medical testimony, the decision of the Commission, for or against an award, is final and must be affirmed on review." Id. Section 53. In Cole v. Superior Coach Corporation, 106 So. 2d 71, decided four months ago, we reiterated the rule relating to medical questions and the Commission's function as the trier of the facts. In that case, not involving a heart attack, this Court said:

"The Commission is the trier of fact. It will be affirmed when there is substantial evidence supporting its decision. The medical testimony cannot be reconciled. The Commission had the right to evaluate it, and to accept that of appellee. The medical question is not an

uncomplicated one. The issues with reference to an alleged injury of this type are properly within the province of medical experts. In all but the simple and routine cases (and this is not in that category), it is necessary to establish medical causation by expert testimony. Where there is a conflict in such evidence, its evaluation and credibility, with reference to the existence, nature and etiology of an injury or disease, are issues for the Commission acting upon such medical testimony. 2 Larson, Workmen's Compensation (1952), Sections 79.50-79.54.''

Two physicians, general practitioners, were of the opinion that Hicks' employment was a contributing cause. The other physicians, specialists in cardiovascular diseases, were of the opinion that the work he was doing did not contribute to the attack from which he died. The case comes squarely within the rule stated in *Cole v. Superior Coach Corporation,* and if we are to follow our own rule, this case should be affirmed. I am unable to see the applicability of any of the cases cited in the majority of the cases. I do not disagree with the rules of law stated in those cases. One question is involved. It is causal connection. It is one of fact. The evidence was conflicting. The Commission resolved the conflict in favor of appellees. Nothing else can be made of this record. According to Larson, Dunn, and our own rules, the case should be affirmed.

The majority opinion does not solve the delimma of the heart cases. Reference is made by the majority to some statements by text writers on administrative law and seem to commit this Court to a rule that the Court should reverse findings of fact which are ''clearly erroneous.'' ''Clearly erroneous'' has been held to mean without substantial evidential basis. See cases, Words & Phrases, Vol. 7. I respectfully submit that this phrase adds nothing by way of providing a standard for resolving compensation cases. What is done in this case

is clearly at variance with Larson, Workmen's Compensation Law, Section 80.00, et seq.

The factual question decided by the Commission and overturned by the majority is purely a medical one about which the best physicians seem to disagree. As far as I am concerned, I do not feel qualified to say that the medical theory of experts in cardiovascular diseases is "clearly erroneous" and that the medical theory of general practitioners is clearly right. That is exactly what the majority has done in this case.

*McGehee. C. J.*, and *Roberds, J.*, join in this dissent.

### ON MOTIONS

ETHRIDGE, J.

■■■ Appellee's motion for attorney's fee is sustained in the amount of one-third of appellee's recovery, for all legal services rendered. Her motion for six per cent interest from the due date of each weekly installment of compensation until paid is also sustained. Statutory damages of five per cent are allowed on the total amount of weekly installments accrued and unpaid from the date of the judgment of the circuit court to the date of the judgment of affirmance here. Miss. Code 1942, Sec. 1971.

Motions for allowance of interest, damages, and attorney's fee sustained, as specified.

*Roberds, P. J.*, and *Hall, Holmes* and *Gillespie, JJ.*, concur.