ETHRIDGE, Chief Justice:
The Workmen’s Compensation Commission, upholding its attorney-referee, held that the medical evidence “failed to estab *463 lish a causal relationship * * * between claimant’s * * * stroke and the activities of his employment * * * ” and thus denied compensation benefits to Moses E. Wilkes, claimant-appellee. The Circuit Court of Alcorn County reversed the Commission’s order, and held that the credible' medical evidence reflected a causal relationship between claimant’s cerebral vascular accident and employment. It awarded permanent total disability benefits, but reduced them by finding that a pre-existing condition (congenital aneurism) contributed fifty percent to the accident. We affirm the circuit court’s judgment on liability, but remand this case to the commission to determine the percentage of apportionment.
Wilkes, 40 years of age, was a truck driver for Dean Truck Lines. He had been driving large tractor-trailer units for eighteen years, and for this employer, one year. His usual run was from Corinth, Mississippi, to Louisville, Kentucky, and return, a distance of 353 miles one way. Most of this route was two-lane, heavily traveled highways. He usually drove a diesel tractor, pulling a forty-foot trailer loaded with freight, which when empty weighed 23-24,000 pounds. He averaged three round trips per week, whfch would be a minimum of 2,118 miles driven per week.
On February 25, 1968, around eight p. m., Wilkes left Corinth for Louisville. This was the third trip which he had made that week, and as was customary, he made it without a relief driver. This trip was unusual in that he was wearing glasses for the first time, and another truck accompanying him had some mechanical difficulty which required several stops. Wilkes arrived at his employer’s terminal in Louisville around nine a. m. on February 26, or thirteen hours after leaving Corinth. Both trailers were unhooked at the terminal, and the other driver drove his tractor to a shop for repairs. Claimant followed, intending to pick him up and then to rest. While stopping at a red light before reaching the shop, Wilkes suffered a cerebral vascular accident or stroke. He was totally and permanently disabled.
During the two weeks before this stroke occurred, Wilkes began to experience dizzy spells, difficulty in focusing his eyes, and headaches. These symptoms only occurred while he was driving his truck. Because of these symptoms, Wilkes went to two local doctors for examination and treatment, but neither of them found any significant abnormality, although one prescribed glasses, which he was wearing for the first time on this trip.
Wilkes’ job as a driver of these large tractor-trailer units, with accompanying responsibility and sustained concentration over many hours, involved substantial physical effort and mental strain. Considering the entirety of the medical testimony, the overwhelming weight of the evidence reflects that claimant’s stroke was causally related to the stress and strain of his job, which aggravated his pre-existing condition. Three doctors who testified for claimant were of that opinion.
Two physicians testified for the employer. Wilkes’ attending physician in Louisville, although of the opinion that his stroke was not “directly related” to the job, recognized that stress and activity produced by driving the truck “was the final straw that broke the camel’s back * * * ”; that claimant’s predisposition to á stroke combined with “a final precipitating event,” the driving of the truck. A cardiologist, who examined claimant about a year later, was of the opinion that a specific activity is rarely the “substantial” cause of a stroke, “unless it is very must out of the ordinary for that individual.” However, if he had been treating claimant, he would not have allowed him to do this type of work. If Wilkes had come to him with a warning leak in a cerebral artery, he would have put him in the hospital and tried to remove the stress. If a percentage of work contribution were required, he would limit it to five percent.
Applying statutory and judicial standards to the facts of this case, we think that there *464 is no more than a scintilla of evidence to support the commission’s order denying workmen’s compensation benefits. On the day of his stroke Wilkes had been engaged for many hours in heavy physical labor involving both mental and physical stress. He had a serious pre-existing artery condition. The commission’s findings were unreasonable and clearly erroneous, and cannot serve as a basis for denial of compensation. Practical and commonsensical logic shows that this man’s work contributed to his stroke. Central Electric Power Ass’n. v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959). Hence the circuit court was correct in holding that there was a causal connection between claimant’s work and his cerebral vascular accident.
However, the circuit court erred in undertaking an apportionment for Wilkes’ pre-existing condition. Apportionment is properly and initially a function of the commission. The percentage of contribution of a claimant’s pre-existing condition is a matter which ordinarily is in the sound discretion of the commission under all of the circumstances of the case. Better Living Markets, Inc. v. Smith, 241 So.2d 152 (Miss. 1970); Southeastern Construction Co. v. Dodson’s Dependents, 247 Miss. 1, 153 So.2d 276 (1963); see Dunn, Mississippi Workmen’s Compensation § 56 (2d ed. 1967).
Accordingly, although the judgment of the circuit court is affirmed on the issue of appellant’s liability to appellee for workmen’s compensation benefits, it is reversed in part, insofar as the court determined the question of the contribution for claimant’s pre-existing condition. The case is remanded to the Workmen’s Compensation Commission for determination of apportionment.
Affirmed as to liability, reversed as to apportionment, and remanded to Workmen’s Compensation Commission for determination of apportionment.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.