RODGERS, Justice:
This is an appeal of a workmen’s compensation claim from a judgment of the Circuit Court of Lauderdale County, Mississippi, affirming an award made to the appellee, Joseph D. Jackson, by the Workmen’s Compensation Commission for an accident alleged to have occurred on August 28, 1961, when the appellee suffered a stroke. The attorney-referee awarded permanent total disability at the rate of $8.75 per week, not to exceed four hundred and fifty (450) weeks. He determined that the accident was an aggravation of a pre-exist-ing condition, and he prorated seventy-five per cent to the previous condition. He did not allow maximum payment of $35 per week as compensation from the date of the accident, and appellee, Joseph D. Jackson, has cross-appealed in an effort to obtain benefits from that date.
The record in this case shows that Joseph D. Jackson had been an employee of The Flintkote Company for twelve to fourteen years prior to the time of the alleged accident. He had served in several capacities, but on the date involved he was employed as a utility clerk. There is some question as to the job he was performing, at the time of the accident because normally there were three men working in the office where the appellee worked, a chief cost clerk, a utility clerk and a cost clerk. The cost clerk was away on vacation and appellee was required to perform his duties. Appellee went out on the floor of the plant and performed the duties of the cost clerk as well as the duties required of him in the office.
Appellee testified that on the day of the accident he walked rapidly from one machine to another, a distance of one hundred yards, and back to his office in order to count the commodities being manufactured by two machines and post his “time” books. The machines delivered a new load to be counted every eight to twelve minutes, and as a result appellee claims he was required to be constantly in rapid transit motion. He testified that he “was walking just as hard as I could walk and getting further behind all the time * * * because I couldn’t keep up.” He also testified that it was unusual to operate the two .*«3 machines then being operated at the same time. He said: “I started back to the office after going through all that and before I got near the office I just went to where I couldn’t go any further. I just, I don’t know, I just froze right there. I stood there a minute, ‘drugged’ down to the First Aid — we have a First Aid there in the plant — I ‘drugged’ down there and I could just whisper then. I had lost my .voice, too, and I asked the nurse to take my blood pressure. She took my blood pressure but she didn’t tell me what it was. She just said that you can’t work no more today. So, she, in turn, I suppose, called Mr. Linnevold and he carried me to the hospital.” He testified that when it “hit me * * * I just froze * * * I felt numb, just like this leg and this arm and shoulder went to sleep on me.” He was in the hospital twenty days and has been unable to work since that time. The appellee suffered a cerebral vascular accident at the time he was engaged in work for The Flintkote Company.
The real issue to be determined on this appeal is: Did the cerebral vascular accident arise out of appellee’s employment as a proximate result, or did appellee’s employment aggravate, accelerate, or combine with appellee’s pre-existing disease to produce his cerebral vascular accident?
The testimony shows that the appellee-workman had been for many years suffering from a cardiovascular disease. He had at various times suffered with acute heart failure, decompensation, pulmonary edema and hypertension. He had suffered from a small anterior myocardial infarction. In short, he was suffering from arteriolosclerotic heart disease. His blood pressure was often extremely high. His *397 vision at times was blurred, and he was weak. He was particularly affected on the day of the accident or seizure. This cardiovascular disease condition had existed over a period of several years. He had angina pectoris. He had undergone a serious operation at the University Hospital in Jackson, Mississippi, where Dr. Hardy had performed a bilateral renal artery exploration with left aorto renal artery shunt (by-pass) with teflon, to alleviate his severe cardiovascular disease. His disease was obviously progressive. In 1960, he had developed atrophic ulcers on his feet because of poor circulation. He lost thirty-one days from work in 1959, fifty-four days in 1960, ninety-three days in 1961, and one hundred and thirty-two days in 1962, from sickness before he retired.
The work the claimant was performing on the day of his seizure, or cerebral vascular accident, had been previously performed by a Mr. Hudson who was a polio victim at one time, and as a result he had trouble walking.
Dr. T. G. Cleveland was called as a witness for the workman and testified that he had seen the claimant two times professionally. The first time was a year and seven months after the accident, and again over two years after the accident. He testified that the claimant was totally and permanently disabled. In answer to a hypothetical question, the doctor testified that it was his opinion that the accident was causally connected with the workman’s employment.
On the other hand, Dr. S. C. Ferguson, claimant’s family doctor, testified that: “It is my opinion that Mr. Jackson’s employment and the activities on that particular day were not responsible for his having a stroke.” The doctor also testified that, speaking from a medical background, he was not surprised that the claimant had a stroke. In answer to the question: “In other words, it is something that you could generally expect from a medical background such as his?” he answered: “Yes, sir.”
Dr. James Hardy, the doctor who operated upon the claimant, was introduced as a witness for the employee, and testified that he had “all the requirements it would take, predisposing factors to have a stroke at any time no matter what he was doing * * He said he did not think his activities on the occasion in question contributed to the claimant’s stroke.
The Flintkote Company had for several years provided an insurance plan, by which employees were protected against injuries and accidents occurring “off the job” where such accidents were not covered by the Workmen’s Compensation Act for work connected injuries. The testimony shows that the claimant, Joseph D. Jackson, signed more than twenty applications requesting the employer to furnish benefits due him as a result of his illness, and on each occasion he was paid insurance under the non-work connected plan. Thus, it is contended by the appellants that the claimant recognized that his cardiovascular disease was not connected with his work.
The burden of proving his claim beyond speculation and conjecture is on the claimant in workmen’s compensation cases. The statute requires that the injury be one which both arises out of, and is sustained in, the course of employment, and the burden is on the claimant to establish both elements. Narkeeta, Inc. v. McCoy, 247 Miss. 65, 153 So.2d 798 (1963); Erwin v. Hayes, 236 Miss. 123, 109 So.2d 156 (1959); Ingalls Shipbuilding Corp. v. Howell, 221 Miss. 824, 74 So.2d 863 (1954).
Very little testimony was offered by claimant to show that his cardiovascular accident was work connected, or was caused by extreme physical exertion while doing his work. On the other hand, the testimony offered by the employer, and appellant, American Mutual Liability Insurance Company, is positive, strong and overwhelming to the effect that the claimant-appellee’s *398 work' activity was not the cause of the stroke and did not contribute to, or result in, his cerebral vascular accident.
We have heretofore pointed out in Central Electric Power Association v. Hicks, 236 Miss. 378, 388-389, 110 So.2d 351, 356, 112 So.2d 230 (1959), that:
“The general rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial and reasonable evidence in the record to support the commission’s findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards and the judicial standards based upon the statute which have been established in a large number of cases in recent years. These standards always consist of two parts, one defining the type of questions administrative determination of which is binding upon the courts, and another which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. And questions of fundamental importance are always open to judicial review. * * * The statute provides that the court ‘shall review all questions of laws and of fact’ and, if prejudicial error is found, the case should be reversed.”
We have reached the conclusion in this case that the testimony is not sufficient to establish the claim of the workman-appellee that his cerebral vascular accident, or stroke, was cartsed by his work. We are also of the opinion that this work activity did not aggravate or accelerate claimant’s previous cardiovascular disease so as to precipitate or contribute to the cause of claimant’s cerebral vascular accident. We do not find it necessary to discuss the other issues presented to this Court on direct and cross-appeal in view of our holding that the evidence does not sustain the claim of ap-pellee to benefits provided by the Workmen’s Compensation Act.
The judgment of the circuit court and the order of the Workmen’s Compensation Commission are hereby reversed, and judgment in.favor of appellants will be entered, dismissing the claim of appellee, Joseph D. Jackson.
Reversed and judgment here in favor of appellants.
ETHRIDGE, C. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.