741 So.2d 343 (1999)
ATLAS ROLL-LITE DOOR CORPORATION and Michigan Mutual Insurance Company, Appellants,
v.
Arthur Ray ENER, Appellee.
No. 97-CC-01349-COA.
Court of Appeals of Mississippi.
May 4, 1999.
*344 Gene D. Berry, John (Jay) F. Perry, III, Jackson, Attorneys for Appellants.
David L. Walker, Batesville, Attorney for Appellee.
EN BANC
DIAZ, J., for the Court:
¶ 1. Atlas Roll-Lite Door Corporation and Michigan Mutual Insurance Company, the employer and carrier, appeal the decision *345 of the DeSoto County Circuit Court reversing the Workers' Compensation Commission decision to deny Arthur Ray Ener workers' compensation benefits. Atlas Roll-Lite and Michigan Mutual assert the following issue in this appeal: whether the circuit court erred in reversing the findings of the Mississippi Workers' Compensation Commission which denied Ener any additional medical or temporary total disability benefits and denied him permanent partial disability benefits for the injury he suffered to his right arm while in the course and scope of his employment. We find that Atlas Roll-Lite and Michigan Mutual have failed to prove that the circuit court judge substituted its own findings of fact for that of the Commission on the disputed matters. Therefore, we affirm the ruling of the circuit court.

FACTS
¶ 2. The claimant, Arthur Ray Ener, filed a petition to controvert a workers' compensation claim on November 15, 1995. Therein, Ener claimed that on February 24, 1994, he sustained an injury within the course and scope of employment as a result of retrieving metal from the top of a storage cabinet. Atlas Roll-Lite and Michigan Mutual, the employer and carrier, filed an answer on November 17, 1995, averring, inter alia, that claimant's alleged disability was the result of, in whole or in part, a pre-existing condition, disease, or lesion for which they are not liable.
¶ 3. Ener worked for Atlas Roll-Lite in the grill department. He injured his right arm while retrieving metal from atop a storage building. Without the use of a ladder, Ener climbed up a rack and reached for the material. While doing so, a large and heavy container of materials slid and pinned his right arm. With the advice of his supervisor, Ener waited several weeks before seeking medical treatment.
¶ 4. Ener was treated for the injury to his right arm by Dr. J.A. Calandruccio of the Campbell Clinic from approximately March 22, 1994, until December 8, 1995. During this period of time, two surgeries were performed on Ener's right arm, including a "tennis elbow release" and a subsequent "right radial tunnel release." Following a period of physical therapy, Ener was assigned a 10% permanent partial disability rating by Dr. Calandruccio on December 8, 1995, less than two months following his last surgery.
¶ 5. Pursuant to Mississippi Code Annotated Section 71-3-15(1) and Mississippi Workers' Compensation Commission General Rule 9, Ener requested approval from Atlas Roll-Lite and Michigan Mutual to be examined by a physician of his choice. This request was granted, and Ener was examined by Dr. Robert H. Bobo on March 17, 1995, and treated thereafter on March 24, 31, and August 28, 1995. On the last two examinations, Dr. Bobo and his colleague opined that Ener did not suffer from any permanent partial disability to his right arm. Ener was subsequently discharged from Dr. Bobo's care and instructed to return to the Campbell Clinic with any future complaints.
¶ 6. Atlas Roll-Lite and Michigan Mutual have paid a total of $5,132.82 in temporary total disability benefits to Ener. Additionally, the employer and carrier have paid $16,214.31 in medical bills as the result of Ener's on-the-job injury.
¶ 7. A hearing was held, and the administrative law judge entered an order on December 3, 1996, determining that Ener did not suffer any permanent partial disability to his right arm. Thereafter, the Full Commission affirmed the decision of the administrative law judge. The DeSoto County Circuit Court reversed and remanded the Full Commission's decision, and this appeal was taken.

DISCUSSION

WHETHER THE CIRCUIT COURT ERRED IN REVERSING THE FINDINGS OF THE MISSISSIPPI'S *346 WORKERS' COMPENSATION COMMISSION
¶ 8. Appellate review of compensation claims is a narrow one. The standard of review utilized by this Court when considering an appeal of a decision of the Workers' Compensation Commission is well settled. The Mississippi Supreme Court has stated "[t]hat the findings and order of the Workers' Compensation Commission are binding on the Court so long as they are `supported by substantial evidence.'" Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought, 523 So.2d at 317). An appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder. Barnes v. Jones Lumber, Co., 637 So.2d 867, 869 (Miss.1994). Therefore, "the Commission may accept or reject an administrative judge's findings." Id. In this case, the DeSoto County Circuit Court reversed and remanded the Mississippi Workers' Compensation Commission which affirmed the order of the administrative law judge after thoroughly studying the record and the applicable law. Our standard of review is set forth in Delta CMI v. Speck:
Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts. `[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes.'
As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a `mere scintilla' of evidence, and that it does not rise to the level of `preponderance of the evidence.' It may be said that it `means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
586 So.2d 768, 772-73 (Miss.1991) (citations omitted).
¶ 9. This Court considers the essential components of a compensation case as stated in Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss.1986):
1. The claimant generally bears the burden of proof to show an injury arising out of employment, and a causal connection between the injury and the claimed disability;
2. The Commission is the trier of facts, judges the credibility of witnesses, and facts supported by substantial evidence should be affirmed by the circuit court;
3. Unless prejudicial error is found, or the verdict is against the overwhelming weight of the evidence the Commission's order should be affirmed.
Id. at 1332 (citing Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925, 928 (Miss.1984)).
¶ 10. An order of the Workers' Compensation Commission will be reversed by this Court only where such order is clearly erroneous and contrary to the weight of the credible evidence. Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991); see also Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). "This Court will *347 overturn a [C]ommission decision only for an error of law ... or an unsupportable finding of fact." Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991) (citations omitted). The claimant bears the general burden of proof of establishing every essential element of the claim, and it is not sufficient to leave the matter to surmise, conjecture, or speculation. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988); Flintkote Co. v. Jackson, 192 So.2d 395, 397 (Miss.1966); Narkeeta, Inc. v. McCoy, 247 Miss. 65, 153 So.2d 798, 800 (1963); V. Dunn, MISSISSIPPI WORKERS' COMPENSATION, § 265 (3d ed.1982).
The claimant, as a general proposition, has the burden of proof. He must meet this burden by showing an accidental injury arising out of and in the course of his employment and a causal connection between the injury and the claimed disability.
Narkeeta, 153 So.2d at 800. However, "[d]oubtful cases should be resolved in favor of compensating the claimant `so that the beneficent purposes of the act may be accomplished.'" Walker Mfg. Co. v. Butler, 740 So.2d 315 (¶ 24)(Miss.Ct.App.1998).
¶ 11. Although we are aware of the standard of review imposed upon us when reviewing a decision of the circuit court in a workers' compensation case, we are also convinced in the case sub judice that the circuit court correctly reversed the finding of the Commission because it was clearly erroneous under the Mitchell Buick standard. Even though the circuit court found that slight evidence existed to support the Commission's decision, it followed the precepts of Harpole Bros. Constr. v. Parker, 253 So.2d 820, 823 (Miss.1971), which states that a decision of the Commission may be considered clearly erroneous after an appellate court reviews the "evidence [and] is left with the definite and firm conviction that a mistake has been made...." Moreover, the Workers' Compensation Act should be liberally construed to carry out its beneficent remedial purpose. Stuart's Inc. v. Brown, 543 So.2d 649, 652 (Miss.1989).
¶ 12. In this case, Ener was sent to company doctors at Campbell Clinic who treated him extensively and performed two different surgeries on him. Dr. Calandruccio, a Campbell Clinic doctor, gave Ener a 10% permanent partial disability rating. Dr. Bobo, a Memphis Orthopedic Associates, Inc., doctor who also treated Ener, did not rate him as disabled. During testimony, Ener's supervisor stated that Ener still had pain and could not do some of his assigned duties without help from others. Ener continues to work with the aid of a brace on his arm. He also wears a special unit at night. A simple review of these facts does not support a conclusion that no permanent impairment exists.
¶ 13. In fact, there appears to be no dispute that Ener suffered an injury and continues to experience pain and swelling as a result. Dr. Bobo never opined that Ener was either exaggerating or fabricating his symptoms; rather, Dr. Bobo simply stated that he was unable to "identify any objective cause of [Ener's] persistent symptoms." It would be harsh to penalize Ener for his physician's inability to diagnose the particular cause of his suffering. Therefore, we affirm the decision of the DeSoto County Circuit Court to reverse and remand this case to the Workers' Compensation Commission.
¶ 14. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT REVERSING AND REMANDING THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION TO DENY CLAIMANT BENEFITS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE EMPLOYER AND CARRIER.
BRIDGES, IRVING, LEE AND PAYNE, JJ., CONCUR.
*348 McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY SOUTHWICK AND KING, P.JJ., COLEMAN AND THOMAS, JJ.
McMILLIN, C.J., dissenting:
¶ 15. I dissent. The Commission in this case decided that Ener had not suffered a permanently disabling injury. There is substantial evidence in the record to support that conclusion and this Court exceeds its mandate when it purports to set aside that determination. Hardin's Bakery v. Taylor, 631 So.2d 201, 204-05 (Miss. 1994). It is not our prerogative to alter the result reached by the Commission even though, were we sitting as original fact finder, we might think a different result would be warranted. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss.1985).
¶ 16. After Ener injured his arm at work and had undergone two surgeries, he continued to be treated by Dr. Calandruccio at Campbell Clinic as his recovery progressed. However, in March 1995, for reasons that do not appear in the record, Ener apparently became disenchanted with Dr. Calandruccio's services and exercised his election under section 71-3-15(1) of the Mississippi Code to obtain treatment from a physician of his own choosing. Miss.Code Ann. § 71-3-15(1) (Rev.1995). With the advice of his attorney, Ener selected Dr. Robert Bobo of Memphis Orthopedics Associates and began seeing Dr. Bobo in March.
¶ 17. The break with Dr. Calandruccio was rather abrupt. Dr. Calandruccio's records indicate that Ener's last visit to Campbell Clinic was on February 8, 1995. Ener had two scheduled appointments in March to see Dr. Calandruccio, but the clinic notes indicate that he failed to appear for either. Dr. Bobo, taking over as primary treating physician by Ener's choice, saw him on three different occasions in March. Dr. Bobo ordered vascular lab studies which proved normal. He reviewed Ener's medical records from Campbell Clinic, including a bone scan that had proven normal. He referred Ener for a Greenleaf capacity evaluation of his arm. Those tests did not demonstrate any physical incapacity because of indications of "submaximal effort" by Ener in completing the tests.
¶ 18. Dr. Bobo, after this thorough inquiry into Ener's condition, arrived at the conclusion in late March 1995 that "[t]here is no objective evidence of permanent anatomical impairment" arising out of Ener's injury. In August 1995, Dr. Bobo reconfirmed this conclusion after taking the added precaution of consulting with his associate, Dr. Henard.
¶ 19. Only then did Ener return to Campbell Clinic, where he was seen by Dr. Calandruccio in November for the first time in some eight months. Dr. Calandruccio only saw Ener twice after his interlude under Dr. Bobo's care. Clinical notes introduced into evidence indicate that Dr. Calandruccio, after these two additional visits in November, could not diagnose the cause of Ener's persistent complaints of pain. Nevertheless, on December 8, 1995, Dr. Calandruccio's notes contain the following brief statement, unaccompanied by any explanation: "Permanent partial impairment rating: 10% of the right upper extremity." That one unsupported statement is the sum total of the evidence of a functional disability to Ener's arm. Ener, for reasons known only to him, elected not to obtain Dr. Calandruccio's testimony by deposition to more fully explore the basis for his opinion, although the burden of proving a disability rested with him. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1020 (Miss.1990).
¶ 20. Turning to the non-medical evidence relating to any industrial disability, Ener's supervisor testified that Ener originally returned to work in a light duty status and was assigned to supervise new workers in his department. However, according to the supervisor's testimony, within two hours of his return, Ener voluntarily *349 resumed the normal duties of his old position. After returning to work, Ener received a merit raise based on his job performance in the same position. During the supervisor's testimony, the following exchange occurred:
Q. Have you had an opportunity to observe Mr. Ener's work performance since he's come back from his surgery?
A. Yes.
Q. Is he able to perform all the material aspects of his job that you told us about a minute ago?
A. Yes.
¶ 21. Ener himself testified that he was back on the job full time, working "[a]pproximately around 56 hours a week or more." He complained of pain in the course of performing his duties and indicated that he wore a brace on his arm, though the brace was a self-prescribed device. He also reported that he used a TENS unit outside working hours to attempt to alleviate his pain symptoms. The only possible evidence touching on the disabling nature of Ener's pain was the following colloquy between Ener and his attorney:
Q. Ray, before you got hurt, I'm assuming your job duties included lifting things?
A. Yes, sir.
Q. Did you ever have to have any help doing that?
A. No, sir.
Q. Has that changed?
A. Yes, sir.
Q. All right. What type help do you have to have?
A. Usually someone gets it down for me. Because like I said, I'm afraid that my arm will give way if I try to climb up to get something and try to lift it and hold myself, too, I'm afraid it would be a danger of injuring myself again or someone around me.
¶ 22. In that exchange, there is no hint as to what items Ener previously lifted that he could no longer lift. There is not even any testimony that pain prevented him from accomplishing these vaguely-described lifting maneuvers. Rather, Ener says only that he was afraid that his arm would "give way" if he tried to lift some unspecified object. This testimony appears to be in furtherance of Ener's earlier assertion that, "I have problems holding things. I can be working holding things; and just like I just throw it down, I just lose all grip." There is, however, no medical evidence in the record to support Ener's claim of sudden loss of strength in his handa complaint different from that of recurring pain.
¶ 23. The circuit court, in concluding that Ener had suffered some permanent compensable disability, relied on two propositions. First, it found, as a matter of fact, that "Mr. Ener's supervisor stated that Mr. Ener still had some pain and could not do the same job without help from others." Secondly, the circuit court found Dr. Bobo's opinion concerning the lack of a permanent functional impairment to Ener's arm to be unreliable.
¶ 24. As to the circuit court's reliance on the testimony of Ener's supervisor, it would appear that the circuit court read entirely too much into that evidence. The supervisor did, in fact, confirm that Ener often complained of pain. He also said that Ener's fellow workers would "assist him on occasion." This comment was elicited during the supervisor's direct examination and Ener's counsel made no effort to expand on that statement during cross examination to determine what aspects of the job Ener needed assistance on, with what frequency he sought assistance, or what reasons gave rise to the need for such assistance. Balanced against that rather inconclusive assertion is (a) the unequivocal testimony, previously quoted, that Ener was "able to perform all the material aspects of his job," and (b) the uncontroverted evidence that Ener was *350 working up to 56 hours per week in the same position at a higher pay level than before his injury because he had received a merit raise.
¶ 25. As to the second proposition, the circuit court substantially overstated the medical evidence in Ener's favor by saying that Mr. Ener had been primarily treated "by different doctors from the Campbell Clinic Group," all of whom "gave him a disability rating of 10%." There is no indication that any member of the Campbell Clinic Group other than Dr. Calandruccio concurred in that doctor's entry in his clinical notesa brief entry, unsupported by any clinical findings, made after his treatment of Ener had been suspended for some eight months by Ener's own choice. The circuit court then proceeded to denigrate Dr. Bobo's opinion, saying he only saw Mr. Ener "very few times." The court then concluded, without any arguable basis to do so, that "[t]he total facts of this case do not in any way support the conclusion of the Commission, especially considering that the conclusions of Dr. Bobo have almost no credibility given the finding and treatment of the Campbell Clinic doctors and the testimony of Mr. Ener's supervisor." (emphasis supplied).
¶ 26. Ener, in his brief, urges this Court to decide the case on the same reasoning as did the circuit court. The majority, however, quite properly abandons the unsupportable assertion that Dr. Bobo's findings had "almost no credibility." Nevertheless, the majority persists in ignoring the unrebutted and unimpeached testimony that Ener has, since his return, been able to perform all of the material aspects of his job. Instead, the majority seizes on a passing reference to the fact that, on occasion, Ener has received some unspecified assistance from fellow employees, and parlays that into a conclusion that it is beyond dispute that Ener has suffered a permanent loss of wage-earning ability.
¶ 27. It is perhaps instructive to recall that a workers compensation claim is not a civil action for damages arising out of a personal injury. There is no component for pain and suffering in an injured worker's right to compensation.
A workman is incapacitated within the act when he has lost his earning power in whole or in part. This is the only test. The law provides no compensation for pain and none for physical impairment, except when it is of such character as to raise a presumption of incapacity to earn.

Rivers Constr. Co. v. Dubose, 241 Miss. 527, 538, 130 So.2d 865, 870 (1961) (quoting Hustus' Case, 123 Me. 428, 123 A. 514, 515 (1924)) (emphasis supplied).
¶ 28. Disabilityand not pain aloneis what the workers' compensation laws are intended to address. The statute itself defines what is meant by disability.
"Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.
Miss.Code Ann. § 71-3-3(i) (Rev.1995).
¶ 29. If a worker, after being injured, returns to his same job at the same rate of pay, there is a presumption that the worker has not suffered any permanent disability. Agee v. Bay Springs Forest Prods., Inc., 419 So.2d 188, 189 (Miss.1982). Not only has that occurred in this case, Ener has actually received a merit raise for his post-injury job performance and has demonstrated an ability to perform substantial overtime duties.
¶ 30. There is no doubt that pain alone, even if unexplained by medical evidence, may establish disability. Marley Constr. Co. v. Westbrook, 234 Miss. 710, 721, 107 So.2d 104, 109 (1958). That simply is not the issue in this case. I make no accusation, express or implied, that Ener is being untruthful in his complaints of recurring pain. I do, however, contend that the evidence in this record is overwhelmingly in support of the Commission's conclusion that Ener's continuing symptoms of pain *351 have not diminished his ability to earn wages at the same rate as before his injury. His pain, though it may be real, is not disabling.
¶ 31. It was only by a gross misreading of the record that the circuit court was able to support its decision to reverse the Commission. It is only by the most generous reading of a largely uninformative statement by Ener's supervisor, coupled with a total disregard of a substantial body of competent evidence relied upon by the Commission, that the majority of this Court is able to do likewise. That, simply put, is not the job of this Court.
¶ 32. A fair review of the record of this case would not permit an impartial arbiter to conclude that the Commission's decision was unsupported by competent evidence. The circuit court's decision to reverse the Commission ought to be summarily reversed and rendered.
KING AND SOUTHWICK, P.JJ., COLEMAN AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.