PAYNE, J.,
for the Court:'
PROCEDURAL HISTORY
¶ 1. This worker’s compensation claim had its inception in a work-related accident sustained by Betty J. Ladnier (claimant) within the course and scope of her employment as a maid with Shoney’s Inn. She was granted temporary total benefits from the date of the accident in June 1993 until October 1993 when her physician released her. On May 15, 1996, the administrative law judge ruled against Ladnier. The Mississippi Workers’ Compensation Commission affirmed the decision of the administrative law judge, as did the Circuit Court of the First Judicial District of Harrison County, Mississippi. Ms. Ladnier now appeals the circuit court’s affirmance of the Commission. We now affirm the Commission’s decision and the circuit court’s affirmance.
FACTS
¶ 2. It is uncontroverted that the claimant injured her back lifting a mattress while on the job at Shoney’s Inn June 25, 1993. Following the accident she returned to work for three days before informing her boss she was unable to continue working. Shoney’s directed Ms. Ladnier to consult Dr. Richard Peden, upon Ms. Lad-nier’s complaints of suffering severe back and leg pain as well as experiencing hot spots on the top of her right foot.
¶ 3. Dr. Peden conducted a lumbar MRI that indicated there was a mild disc bulging at L4/5, but no disc herniation or nerve root encroachment or impingement. Dr. Peden conducted two tests in the form of a B-200 that showed only a trace of some low back pain and indicated the person was symptom magnifying. Dr. Peden prescribed muscle relaxers and pain pills and directed Ms. Ladnier to stay home until she felt better. Dr. Peden released Ms. Ladnier to return to work in October 1993 and indicated with a reasonable degree of medical probability that Ms. Ladnier’s condition in October 1993 did not warrant the need for an assignment of any permanent restrictions or limitations on her abilities. Further Dr. Peden released Ladnier. in October 1993 reporting Lanier had reached a level of MMI or maximum medical improvement and finding all exams indicated she had a normal back. Dr. Peden also stated any future herniation would have had to be the result of a new injury or trauma to her back and could not be attributed to the June 1993 injury.
¶ 4. Ms. Ladnier contends at this time she was still in pain, though, and did not return to work for this reason. However, *1101 evidence showed Ms. Ladnier did work on her husband’s dairy farm during the period in 1993 when she was off work from Shoney’s until the 1995 injury. Ms. Ladnier also ceased the physical therapy treatments prescribed by Dr. Peden because she said they caused her too much pain.
¶ 5. Ms. Ladnier further contends from the period beginning October 1993 running through January 1995 she continued to experience intense pain. In January 1995, Ms. Ladnier lifted a tray from her child’s high chair and an intense pain ran through her back that rendered her paralyzed and breathless for the time. Upon this happening, Ms. Ladnier called Dr. Pacita Coss who prescribed muscle relaxers and pain mediation and suggested Ms. Ladnier rest at home a few days. Two days later after suffering much pain Ms. Ladnier went to Stone County Hospital where she was referred to a neurosurgeon, Dr. Harry Dan-ielson.
¶ 6. After reviewing tests, including the MRI of Ms. Ladnier’s cervical spine, a cervical/lumbar myelogram, a cervical/lumbar post CT scan and a lumbar MRI from November 1993, Dr. Danielson diagnosed Ms. Ladnier with a herniated disk at L4/5 with a root impingement on the left. Dr. Danielson was unaware of any prior treatment Ms. Ladnier received for her back; he chose to use conservative treatment on Ms. Ladnier. He indicated it was his opinion that the June 1993 incident was causing the bulging disc, but he agreed that since circumstances were such that Ladnier was able to work a year and a half as a dairy farmer, then it was a real possibility that something else had caused her present herniation, including the January 1995 incident. In explanation Dr. Danielson described how inaccurate and nonscientifie it was to rely on things that cannot be proven such as whether or not Ms. Ladnier’s January 1995 injuries were caused by the June 1993 work-related injury.
¶ 7. Shoney’s declined to pay for Ms. Ladnier’s medical treatment from Dr. Danielson. It was at this time Ms. Ladnier filed her petition to controvert.
ARGUMENT AND DISCUSSION OF THE LAW
STANDARD OF REVIEW
¶ 8. The standard of review utilized by this Court when considering an appeal of a decision of the Workers’ Compensation Commission is well settled. The Mississippi Supreme Court has stated that “[t]he findings and order of the Workers’ Compensation Commission are binding on the Court so long as they are ‘supported by substantial evidence.’ ” Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (quoting Mitchell Buick v. Cash, 592 So.2d 978, 980 (Miss.1991)). An appellate court is bound even though the evidence would convince the court otherwise if it were instead the ultimate fact finder. Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994). This Court will reverse only where a Commission order is clearly erroneous and contrary to the weight of the credible evidence. Vance, 641 So.2d at 1180; see also Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). “This court will overturn a[C]ommission decision only for an error of law ... or an unsupportable finding of fact.” Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991) (citations omitted). Therefore, this Court will not overturn a Commission decision unless it finds that the Commission’s decision was arbitrary and capricious. Id., see also Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991) (stating that where the court finds credible evidence supporting a Commission decision, it cannot interfere with that decision any more than with a case from any other administrative body).
¶ 9. In the case sub judice we believe the administrative law judge and the Commission correctly applied the law. We do not believe the administrative law judge or the Commission abused their discretion in the fact-finding process. Thus, we uphold their decisions.
*1102 ANALYSIS OF THE ISSUE PRESENTED
I. WHETHER THE CIRCUIT JUDGE ERRED IN AFFIRMING THE ORDER OF THE COMMISSION AS THE APPELLANT WHOLLY FAILED TO SHOW THAT HER EXISTING CONDITION IS RELATED TO HER ACCIDENT OF JUNE 25, 1993.
¶ 10. The primary question to be resolved was whether the claimant’s January 1995 back injuries were causally related to the June 25, 1993 injury sustained while the claimant was in the employ of Shoney’s Inn. If the claimant’s back injuries were proven to be causally linked, the claimant was due reimbursement for medical treatment sustained in connection with the January 1995 injury and treatment flowing from that injury.
¶ 11. Ms. Ladnier cites Central Elec. Power v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959), in support of her argument the Workers’ Compensation Commission applied an incorrect legal standard in its review of the facts submitted. In Central Elec. Power, an employee with a history of high blood pressure and a weak heart suffered a fatal heart attack after a day of hard, physical labor on his job. The question in that case was whether the testimony of two of the employee’s personal doctors of many years should stand or whether the testimonies of two experts in cardiology should override the other doctors’ conclusion the physical labor that day prompted the heart attack. The court stated:
[Jjudicial review of findings of the commission extends to a determination of whether they are clearly erroneous. And a finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the commission in its findings of fact and its application of the act.
Id. at 390. In Central Elec. Power, the Mississippi Supreme Court affirmed the judgment of the circuit court which reversed the Commission’s denial of compensation and remanded to award benefits to the appellee. In Central Elec. Power, a clear mistake had been made — rather than accept testimonies from the doctors familiar with Warren’s medical history as the most accurate and credible — the administrative law judge disregarded their opinions. As the court also said, the Commission overlooked the obvious common sense conclusion that any person with a serious heart condition and high blood pressure will suffer if he works at a hard, physically-exerting job, which the Court said was the logical conclusion in such a case.
¶ 12. In the present case, there was no obvious right answer; however, the competing testimonies were weighed and one was given more credence than the other. Accordingly, the allegation appellant makes regarding the administrative law judge’s choosing one doctor’s testimony over another is not so “clearly erroneous” as would warrant overturning the previous rulings on this matter.
¶ 13. In Central Elec. Power, the court set forth factors to use in determining causation, another issue to be reviewed in this case. Those factors included: (a) there should be accorded to the Workmen’s Compensation Act a broad and liberal construction; (b) doubtful cases should be resolved in favor of compensation; and (c) a pre-existing disease or infirmity of an employee does not disqualify a claim if the employment aggravated, accelerated or combined with the disease or infirmity to produce the death or disability for which compensation is sought. Central Elec. Power, 110 So.2d at 355-57.
¶ 14. Reviewing the Central Elec. Power factors and broadly construing the Workers’ Compensation Act, this is not a “doubtful case” whereby an award of compensation is due, nor did the June 1993 *1103 injury “aggravate or accelerate” the subsequent January 1995 injury because Dr. Peden gave Ms. Ladnier a clean bill of health in October 1993. The correct standard was applied in this case, and Central need not be addressed further.
¶ 15. The next issue for our consideration regards testimonies from the several doctors presented. At oral argument on this matter both appellant and appellee cite Marshall Durbin Co. v. Warren, 633 So.2d 1006 (Miss.1994). In that case Warren, the claimant, injured his back in the course of his employment. Two years later Warren had back surgery to remove two ruptured discs. From the time of the injury to the time of the surgery more than two years later, Warren continued to suffer back pain. During this time Warren saw other doctors who treated him for back pain, including several neurosurgeons, each of whom conducted tests and found no objective findings to support Warren’s back pain. However, none of these experts examined Warren once the ruptured discs were discovered.
¶ 16. The administrative law judge awarded Warren disability benefits; the Commission overruled this saying Warren had not met the burden of proving the causal connection between the medical disability to his lower back and the on-the-job accident in August 1986. The circuit court reversed saying the Commission ignored the overwhelming proof that the surgery performed to remove the ruptured discs was causally related to the August 1986 accident. The Mississippi Supreme Court affirmed the circuit court’s reversal of the Commission.
¶ 17. The present case is not unlike Warren. The testimonies of several doctors are at issue as to whose expert conclusions should be given preference. In discrediting other doctors’s opinions, appellant argues first that Dr. Coss did not perform any diagnostic tests on Ms. Ladnier and second, Dr. Peden released Ms. Ladnier in October 1993 giving her permission to return to work, although she still complained of back, leg, and foot pain. The appellant argues the testimony of Dr. Danielson was not given proper deference by the administrative law judge and subsequently not given the same by the Commission and the circuit court and that such improper deference warrants reversal by this Court. For the following reasons, we do not hold to such belief.
¶ 18. Dr. Danielson’s testimony indicated Ms. Ladnier was suffering with a herniation at L4/5 with a root impingement on the left. This contradicted Ms. Ladnier’s complaints in a prior examination with Dr. Danielson that she was suffering radicular pain in her right leg and right foot, which would indicate problems in the right of her back. Further, Dr. Danielson testified he had no opportunity to review the notes from other practitioners or physicians concerning Ms. Ladnier’s prior treatment, including those from Dr. Peden in 1993. After his studies and examinations of Ms. Ladnier and taking into consideration Ms. Ladnier’s activities working on her husband’s dairy farm during the period between October 1993 and January 1995 when she allegedly was in too much pain to return to work, Dr. Danielson stated the January 1995 injury could have caused the disc to herniate. Therefore, this witness upon whom the appellant wholly relies is not even in agreement with her position.
¶ 19. The standard by which we are bound to review the Commission’s decision is as follows:
The result of the typical conflict in medical opinion is that the issue of causal connection ... is said to be one for the medical experts and the commission as trier of the facts, and where there is a conflict of qualified and substantial medical testimony, the decision of the commission, for or against an award, is final and must be affirmed on review.
Mississippi Ass’n of Ins. Agents, Inc. v. Dependents of Clant M. Seay, 218 So.2d 413, 417 (Miss.1969) (quoting Vardaman S. Dunn, Mississippi WORKMEN’S Compensation *1104 § 97 (2nd ed.1967)). Thus, since the testimonies of the doctors were in conflict, the Commission, as the fact finder, was entitled to accept the testimony of Dr. Peden over that of Dr. Danielson. As well, we must affirm their decision on review.
¶ 20. Both parties in the present case have medical experts that advocate the respective arguments of each party. Some question exists concerning exactly what the conflicting aspects are of the two main doctors’s testimonies, Dr. Peden and Dr. Danielson. Nonetheless, there is not so much as to meet the standard set forth above that “the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the commission in its findings of fact and .its application of the act.”
¶ 21. As the law stands today, this Court will reverse an order of the Workers’ Compensation Commission only where such an order is clearly erroneous and contrary to the overwhelming weight of the evidence. Myles v. Rockwell Int’l, 445 So.2d 528, 536 (Miss.1983). With the laws having been observed in resolving this issue raised by the claimant, we will not go behind the fact-finding body. Considering the issue of whether the claimant is entitled to benefits relative to injuries stemming from the January 1995 incident, we cannot find that the administrative law judge misapplied the law, or that she acted in an arbitrary capacity.
¶ 22. In accordance with the foregoing arguments advocating such, the ruling of the Commission will stand affirmed.
CONCLUSION
¶ 23. The law does not support the findings that the claimant is entitled to additional benefits, other than the benefits allowed by the administrative law judge. Therefore, the findings of the administrative law judge and the Commission will be upheld.
¶ 24. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, JJ., CONCUR.
MOORE AND THOMAjS, JJ., NOT PARTICIPATING.