881 So.2d 241 (2003)
HARDAWAY COMPANY and St. Paul Fire and Marine Insurance Company, Appellant,
v.
Harvey BRADLEY, Appellee.
No. 2002-WC-01025-COA.
Court of Appeals of Mississippi.
October 21, 2003.
Rehearing Denied January 13, 2004.
*242 Andrew D. Sweat, Jackson, Brenda Currie Jones, attorneys for appellant.
Jessie L. Evans, Dana Helene Evans, attorneys for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
KING, P.J., for the Court.
¶ 1. This cause arises from a workers' compensation claim filed by Harvey Bradley who sustained a compensable injury on November 1, 1996, while working as a carpenter/finisher for The Hardaway Company. Bradley was injured when wet concrete was accidently poured onto his head and/or neck causing injury to his neck, back and arms. Hardaway and its workers' compensation insurance carrier, St. Paul Fire and Marine Insurance Company, paid Harvey temporary disability benefits from the date of injury to August 29, 1997, in the amount of $12,282.67. Benefits were suspended at that time because one of Bradley's treating physicians, Dr. Howard Katz, found that Bradley had reached maximum medical recovery from a physiatric perspective. Even though Bradley's functional capacity evaluation indicated he could only do a light duty job, Dr. Katz concluded that Bradley could probably do up to a medium duty job. He released Bradley with some restrictions and no permanent impairment rating. Bradley's primary treating physician, Dr. John Frenz, recommended surgical intervention. Dr. Katz disputed this finding. On the basis of Dr. Katz's recommendation Hardaway notified Bradley that it would refuse to pay for the surgery. A motion to controvert was filed.
¶ 2. The parties agreed to submit the matter for determination by the Commission on the record made by the affidavits of the medical providers. No evidentiary hearing was held to receive lay testimony. The issues presented by the parties sought (1) a determination of whether Bradley needed surgery as a result of his injury as recommended by his primary treating physician, and (2) a determination of the existence of and extent of temporary disability attributable to the injury.
¶ 3. The administrative law judge found that the preponderance of the evidence supported the finding that Bradley did not need surgery and ordered Hardaway to pay temporary total disability at the rate of $264.55 per week from November 1, 1996 to August 29, 1997. On appeal the Full Commission affirmed the administrative law judge. The circuit court reversed the order of the Commission and Hardaway appealed.
¶ 4. According to the findings of the administrative law judge, Bradley was first treated on the day of the injury at MEA Medical Clinic. The treating physician diagnosed a cervical strain secondary to blunt trauma to the head. In a visit to the clinic several days later, in addition to neck pain and stiffness, Bradley complained of intermittent numbness and tingling in the fingers of both hands, and chronic back pain radiating through his left leg. An MRI was ordered and physical therapy and pain medication were prescribed.
¶ 5. Bradley sought treatment from a neurosurgeon, Dr. John Frenz, on November 18, 1996. Dr. Frenz saw Bradley on approximately twenty-six occasions between November 18, 1996 and November 25, 1997. According to Dr. Frenz, the MRI performed on November 6, 1996, had shown disc desiccation (meaning that over time the intervertebral discs had dried out *243 due to a decrease in the amount of water present, causing the appearance of "Black disc" on an MRI) at C4-5 and C5-6 with central disc bulging. According to Dr. Frenz, the bulge encroached slightly on the cervical cord canal but not significantly on the cervical cord itself. Dr. Frenz noted that Bradley had not responded to a wide array of conservative treatments including wearing a cervical collar, using a TENS (Transcutaneous Electrical Nerve Stimulation device which works by sending electrical pulses across the surface of the skin and along the nerve fibers which prevent pain signals reaching the brain and also stimulate the body to produce higher levels of its own natural painkiller, called "endorphin") unit, and various spinal epidural corticosteroid injections.
¶ 6. Dr. Frenz concluded that Bradley's "symptoms of cervical spine injury with chronic sprain/strain and intervertebral disc injury disabled him from gainful employment." Dr. Frenz also concluded that Bradley would "gain a reasonable degree of improvement by relief of symptoms and increased functional capacity were he to undergo surgery to the cervical spine for a removal of the abnormal disc and fusion of the involved vertebrae." He further opined that "it is within reasonable medical certainty that at best without said surgery [Bradley] would remain in his present state of pain and incapacitation indefinitely, if not in fact worsen over some undefined period of time." He also stated that Bradley had elected to proceed with surgery.
¶ 7. On January 15, 1997, Bradley submitted to an independent examination by neurosurgeon Dr. Lon Alexander. At that time, Dr. Alexander reported that Bradley was wearing a soft collar and complained of posterior neck pain that radiated down his right arm into his right hand with numbness bilaterally. Bradley also complained of low back pain with radiation into his right leg and burning in his legs.
¶ 8. Dr. Alexander's report of the examination revealed a free range of cervical motion, normal strength in all extremities, and reflexes that were found to be equal. It was also Dr. Alexander's opinion that the November 6, 1996 MRI was "entirely within normal limits." Dr. Alexander concluded that:
1. Bradley was "status post injury with objectively normal neurological examination and non-dermatomal sensory loss."
2. He had no surgical lesions in his neck and should continue with some sort of therapy.
3. An evaluation by a physiatrist would be prudent at some point.
4. A normal EMG and nerve conduction study might help rule out any structural lesions if Bradley continued to complain of non-dermatomal, non-anatomic numbness in the upper extremities.
¶ 9. On May 9, 1997, Bradley saw Dr. Howard Katz, a physiatrist,[1] for the first time for an independent medical evaluation. Bradley's chief complaints were (1) low back pain; (2) burning in both legs "on the tops and bottoms," sharp shooting pains throughout his legs, numbness and tingling in both legs and sometimes his feet; (3) spasms in both arms, numbness down the medial right forearm down to the index, long and ring fingers; (4) numbness *244 down the left medial forearm to the small finger; and (5) headaches every two days.
¶ 10. The report of Dr. Katz's physical examination indicated that:(1) a pin prick exam administered to Bradley was unreliable throughout; (2) sometimes Bradley said that something was dull and the next time when tapped in the same place he would say that it was sharp;(3) there was no dermatomal or anatomic explanation for Bradley's inconsistent pin prick examination; (4) Dr. Katz found Bradley's pin prick examination to be one of the most unreliable he had ever encountered; and (5) Dr. Katz found that Bradley's deep tendon reflexes were normal and symmetric and the rest of the neurologic exam to be normal.
¶ 11. Dr. Katz assessed Bradley's condition as status post cervical strain with no objective evidence of neurologic deficit. He concluded that Bradley's complaints were difficult to compare to his injury and could represent symptom magnification, psychological overlay and malingering.
¶ 12. A second pin prick examination By Dr. Katz on June 19, 1997, was again thought to be unreliable. Bradley was referred to physical therapy for therapeutic strengthening, exercise and flexibility. Pain medication was also prescribed. On July 10, 1997, on a return visit to Dr. Katz, Bradley reported no improvement with physical therapy. He still complained of neck pain, bilateral arm pain, low back pain and right leg pain. He requested refills on Daypro and Valium and different pain medication. Bradley also asked to have surgery performed. Dr. Katz's diagnosis remained unchanged and he ordered a functional capacity evaluation for Bradley at the Rehability Center.
¶ 13. Bradley was evaluated by the Rehability Center on August 20, 1997. The records from the Center indicate that Bradley did not give his maximum effort and that he magnified his symptoms. The physical therapist concluded that Bradley's true functional maximums could not be determined "secondary to claimant stopping tasks due to complaint of pain with few, if any, changes in physical signs present to warrant stopping the tasks." The therapist noted that further evaluation of psychological social and/or motivational factors might have been warranted.
¶ 14. Dr. Katz next saw Bradley on August 29, 1997. Bradley complained that he still tingled all over. Dr. Katz discussed the findings of the functional capacity evaluation with Bradley and questioned why it showed four of five positive non-organic signs, inconsistent varying behaviors and overall self limiting, and inconsistent and inappropriate behavior with all testing except for his strength grip. Bradley's immediate response was, "They could have lied about me." When Dr. Katz asked why the therapist would lie, Bradley said that he did not know.
¶ 15. Dr. Katz's own examination of Bradley at this visit indicated that Bradley sat comfortably and moved smoothly and evenly during conversations and when he walked down the hall with Dr. Katz. Dr. Katz noted that when not testing, Bradley had no difficulty ambulating, but in testing he had only 3+ strength in his lower extremities. Dr. Katz's diagnosis and impressions remained unchanged and he concluded that Bradley might benefit from psychiatric counseling but that Bradley was only interested in surgery. Dr. Katz saw no indication for surgery. He also concluded that Bradley had reached maximum medical recovery from a physiatric perspective. While Bradley's functional capacity evaluation indicated he could do only a light duty job, it was Dr. Katz's opinion that Bradley could probably do up to a medium duty job. He released Bradley *245 to return to work with some restrictions and no permanent impairment rating.
¶ 16. The administrative law judge found that, even though Dr. Frenz treated Bradley more often and over a longer period of time than did either Dr. Katz or Dr. Alexander, a preponderance of he evidence indicated that the opinions of Drs. Alexander and Katz had greater probative value than the opinion of Dr. Frenz. She also found that all of the diagnostic tests and analyses including the MRI, myleogram, CT scan and functional capacity evaluation supported Dr. Katz and Dr. Alexander's conclusion that no surgery was warranted. These findings were affirmed by the Full Commission.
¶ 17. In reversing the decisions of the administrative law judge and the Full Commission, the circuit court judge found that their decisions were not supported by the substantial credible evidence. Circuit Court Judge Tomie Green held as follows in her memorandum opinion and order:
In determining whether the Commission erred in its decision, the Court must review the record as a whole. Even though there may be slight evidence to support the Workers' Compensation Commission's decision, that decision can be clearly erroneous when in light of the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. Guardian Fiberglass, Inc. v. LeSueur, 751 So. 2nd 120[1], 1204 (Ct.App.1999). This Court, after review finds that Bradley submitted substantial evidence to support an award of permanent partial disability benefits and that the Full Commission may likely have made such a mistake in its assessment of Bradley's benefits. While it is true that Dr. Katz and Dr. Alexander opined that Bradley did not require surgery, and Dr. Katz specifically diagnosed Bradley as reaching maximum medical recovery, Dr. Katz, Dr. Alexander, and Dr. Frenz's diagnosis conflicted in that, Dr. Frenz opined that without the recommended surgery, Bradley's condition would not improve and would in fact worsen. Further, it should be noted that the conflict regarding Bradley's condition came from physicians who examined Bradley at the request of the Workers' Compensation Commission. The Court in Atlas Roll-Lite [Door]Corporation v. Ener, 741 So.2d 343, 347 (Ct.App.1999), was clear in its opinion that "doubtful cases should be resolved in favor of compensating a claimant so that the beneficent purposes of the Workers' Compensation Act may be accomplished."
In light of the rulings in Atlas and Guardian Fiberglass, the Court is of the opinion that Bradley had not reached maximum medical recovery on August 29, 1997, and that further surgery is needed.
¶ 18. Finding that Judge Green came to the correct resolution of this matter, this Court affirms her ruling to reverse the Commission, albeit on different grounds.

ANALYSIS OF THE LAW
¶ 19. Under this Court's standard of review on workers' compensation matters the Full Commission, as the ultimate fact finder, enjoys the presumption that it made proper determinations as to the weight and credibility of the evidence and its findings are binding on this Court provided they are supported by substantial evidence. Furthermore, this Court will only reverse the Commission's decision when the decision is erroneous and contrary to the weight of the evidence. Page v. Zurich Am. Ins. Co. of Ill., 825 So.2d 721, 722(¶ 3) (Miss.Ct.App.2002). Finding that the Commission's decision was erroneous *246 and contrary to the weight of the evidence, reversal is in order.
¶ 20. In a factually similar case, The Mississippi Supreme Court held that "it is the obligation of the employer to provide whatever is needed or is reasonably calculated to carry out the humanitarian purposes of the Workers' Compensation Act," and that, "there is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity." Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 315 (¶¶ 31-32) (Miss.1997).
¶ 21. In Spann, the Commission upheld the administrative law judge's ruling that Spann was not entitled to surgery that had been recommended by his primary treating physician who was, coincidentally, Dr. John Frenz. As in the case sub judice, two other physicians had found that surgery was unnecessary or would not be beneficial to Spann's recovery. In reversing the Commission, the court held that the employer, Wal-Mart, was obligated, pursuant to the Act, to allow Spann to have the surgery recommended by Dr. Frenz. Id. at (¶ 33). The court further held that "the case law and Act mandate that as long as a particular treatment is deemed `necessary and reasonable' by a competent treating physician, the employee and carrier are obligated to furnish such treatment ... [and][t]here is no dispute that Dr. Frenz is a competent physician as defined by the Act." Id. at (¶ 34).
¶ 22. Following the dictates of the supreme court's holding in Spann, it is the finding of this Court that "[f]ollowing surgery, if still indicated, and the appropriate period of recovery, it should be determined whether or not maximum medical recovery has indeed been achieved, and if so, whether any temporary or permanent partial disability exists." Id. at (¶ 36).
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTYIS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.
GRIFFIS, J., Dissenting.
¶ 24. With respect to the majority, I am of the opinion that both the circuit court and now this Court reached an incorrect result. Therefore, I dissent.
¶ 25. In Fought v. Stuart C. Irby Co., 523 So.2d 314 (Miss.1988), the Mississippi Supreme Court succinctly stated the appropriate standard of review of a decision by the Mississippi Workers' Compensation Commission. The Court held:
The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding. See Dunn, Mississippi Workers' Compensation §§ 284 (3d ed.1982). If the Commission's findings of fact and order are supported by substantial evidence, all appellate courts are bound thereby. [citations omitted.] This is so, even though the evidence would convince this Court otherwise, were we the fact finder. Georgia-Pacific Corp., 484 So.2d at 1028 (quoting Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss.1985)). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. Myles v. Rockwell International, 445 So.2d 528, 536 (Miss.1983) (citing Masonite Corp. v. Fields, 229 Miss. 524, *247 91 So.2d 282 (Miss.1956)); and Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss.1975).
Fought, 523 So.2d at 317.
¶ 26. In the second sentence of its analysis, the majority cites the appropriate standard of review to be that "this Court will only reverse the Commission's decision when the decision is erroneous and contrary to the weight of the evidence." I am of the opinion that this is incorrect. The court in Fought stated one principle, which may be applied through two similar examinations. First, an appellate court is bound by the Commission's decision if it is supported by "substantial evidence." Second, stated differently, an appellate court may reverse the Commission only if the decision is clearly erroneous and contrary to the overwhelming weight of the evidence. Id. In practice, the difference between these two standards is slight; however, the essence is that appellate courts may not simply reweigh the evidence and interject its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported. Id. My review will consider the facts and an examination of both versions of the standard of review.
¶ 27. Several different physicians examined Bradley. An MRI was performed and interpreted. The physicians arrived at two totally opposite conclusions. Dr. Frenz, Bradley's physician, concluded that the MRI revealed abnormalities which required surgery. Dr. Alexander and Dr. Katz, who performed independent medical examinations at the request of the Commission, found the MRI to be within normal limits and concluded that Bradley was not in need of further surgery. The administrative law judge and the Commission considered these conflicting opinions and determined that Bradley had reached maximum medical improvement and was not in need of further medical or surgical intervention.
¶ 28. The Commission's decision is supported by the opinions of Dr. Alexander and Dr. Katz. Under Fought, we must consider whether the Commission relied on "substantial evidence." If it did, we must affirm. Substantial evidence has been defined as more than a scintilla of evidence. Central Elec. Power Ass'n v. Hicks, 236 Miss. 378, 389-90, 110 So.2d 351, 357 (1959). Here, with the testimony of two physicians, who conducted independent medical examinations, the Commission's decision was supported by more than a scintilla of evidence. Therefore, "substantial evidence" supporting the Commission's decision was present.
¶ 29. Next, the majority concludes that the Commission's decision was erroneous and against the weight of the evidence. Neither the circuit court nor this Court should attempt to reweigh the evidence. In Baugh v. Cent. Miss. Planning, 740 So.2d 342, 344 (Miss.Ct.App.1999), we held:
Where two or more qualified medical experts reach different conclusions, we will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission as the trier of fact, has previously determined which evidence is credible, has weight, and which is not.
Again, with the opinion of two physicians to support the Commission's decision, it is difficult to conclude that the Commission's decision was against the "overwhelming" weight of the evidence.
¶ 30. Other legal principles must also be considered. In reviewing this claim and the evaluation of evidence by the Commission, this Court is bound by the factual findings of the Commission "even though the evidence would convince the court otherwise if it were instead the fact finder." *248 Ladnier v. Shoney's Inn, 751 So.2d 1099, 1101 (Miss.Ct.App.1999). We may not interfere, absent an error of law, where credible evidence exists to support the Commission's decision. Lanterman v. Roadway Express, Inc., 608 So.2d 1340, 1345 (Miss.1992). As in this claim, "where there is a conflict of qualified and substantial medical testimony, the decision of the commission, for or against an award, is final and must be affirmed on review." Ladnier, 751 So.2d at 1103.
¶ 31. The portion of the circuit court's memorandum opinion, cited by the majority, clearly indicates that the circuit court reweighed the evidence before the Commission and interposed its findings in the place of the Commission's, which should not occur. While the majority states that it relies on different grounds, it must be noted that there was a direct conflict in the qualified medical testimony presented to the administrative law judge and the Commission. Accordingly, the appropriate standard of review requires that we, as an appellate court, must therefore accept the Commission's findings and conclusions.
¶ 32. The majority's other grounds for reversal focuses on language contained in the Mississippi Supreme Court's decision in Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (Miss.1997). Spann does not support the majority's position. In Spann, three doctors offered testimony. Dr. Frenz concluded that Spann needed surgery; Dr. Nix testified that surgery was not necessary;[2] and Dr. Barrett concluded that there was a 50-50 chance that Dr. Frenz's planned surgery would improve Spann's condition enough for him to go back to work. Id. at 310 (¶¶ 7-10). The supreme court ordered treatment, by Dr. Barrett instead of Dr. Frenz, to continue on the basis that "the only disagreement" between Dr. Frenz and Dr. Barrett was that the former opined surgery was required and the latter opined it had a 50-50 chance of success. Id. at 312(¶ 15). The expert opinions by Drs. Frenz and Barrett were not in direct conflict. The only credible physician testimony was that the proposed medical treatment had a high rate of success, i.e. it would allow Spann to resume heavy work duties. Id. at 314 n. 2 (¶ 25). Such is not the case here.
¶ 33. Instead, the majority cites Spann for the proposition that if a competent treating physician says that a particular treatment is necessary and reasonable, the employer and carrier must pay for it. Id. at 315 (¶ 34). This reading of Spann is contrary to our workers' compensation laws. Certainly, the employer, through the proper procedures, has the right to question whether a certain treatment is necessary. The statutes and rules allow the employer to object and require the Commission to decide whether certain medical procedures should be authorized. Mississippi Code Annotated Section 71-3-47 (Rev.2000); Commission General Rule 9; Procedural Rule 22. "[I]f a dispute arises about whether a particular medical service or supply is reasonable and necessary, one or more of the parties may call upon the Commission to resolve the dispute." 9 Ency. Miss. Law, Workers' Compensation Law, § 76:102 (2001).
¶ 34. The majority here reads Spann to override the employer's right to challenge a particular medical treatment on the grounds that it is not reasonable or necessary. Such cannot be the case. In Spann, the only two credible physicians agreed that the planned treatment was reasonable, necessary, and there was a significant *249 chance that the surgery would allow Spann to resume his work duties. Spann, 700 So.2d at 310. Spann stands for the proposition that if all physicians agree that a certain medical treatment would benefit the employee and there is no credible evidence to the contrary, the Commission is then obligated to authorize the treatment.
¶ 35. Here, the situation is different. The expert testimony by Dr. Alexander and Dr. Katz was in direct conflict to the testimony of Dr. Frenz. The physicians did not agree on the treatment. Instead, there was substantial evidence from two physicians, both of whom conducted independent medical examinations as ordered by the Commission, that the planned treatment was not reasonable or necessary based on the medical findings.
¶ 36. For these reasons, I find that the Commission's decision was proper. The decision was supported by substantial evidence, and it was not clearly erroneous and contrary to the overwhelming weight of the evidence. Therefore, I would reverse the circuit court and reinstate the Commission's decision.
SOUTHWICK, P.J., JOINS THIS SEPARATE OPINION.
NOTES
[1] A physiatrist is a medical specialist in the field of physical medicine and rehabilitation whose focus is on evaluating and restoring function. The physiatrist cares for patients who suffer acute and chronic pain and musculoskeletal problems like back and neck pain, tendinitis, pinched nerves and fibromyalgia. Florida Society of Physical Medicine & Rehabilitation, http:www.fspmr.org/physiatrist.htm
[2] Dr. Nix's testimony was not considered credible because (a) his answers on cross-examination were uncertain; (b) he examined Spann only once; and (c) he admitted that he had not reviewed Spann's MRI. Spann, 700 So.2d at 310.