WESTBROOKS, J., FOR THE COURT:
¶ 1. Christopher Walker appeals the Workers' Compensation Commission's decision overturning an administrative judge's determination that he suffered an on-the-job injury to his lower back. The administrative judge found in favor of Walker and awarded him temporary total disability benefits until he reached maximum medical improvement, as well as medical expenses, including for spinal surgery. On a petition for review, the Commission disagreed with the administrative judge's findings, reversed the administrative judge's order, and dismissed Walker's *895 petition for failure to prove a compensable workplace injury. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Walker had an extensive medical history with lower-back pain prior to working for Kinder Morgan Inc. Walker began his employment with Kinder Morgan on or about September 26, 2011. When he started working he was already undergoing physical therapy for his back from a prior accident. According to Walker, Kinder Morgan was unaware of his previous work-related and automobile injuries. Around February 11, 2015, Walker had an automobile accident. Damage was done to his vehicle, and Walker was taken to the emergency room. According to Walker, he was experiencing muscle spasms and tingling in his foot following the accident.
¶ 3. Walker was prescribed a muscle relaxer and pain medication, and he was taken off work for a week because Kinder Morgan does not allow its employees to work while taking mood-altering medications. Walker returned to Kinder Morgan on February 24, 2015, with no restrictions. On his first day back to work, Walker was required to assist a coworker, Donte Meyers, in dismantling a compressor, draining its oil, and removing and replacing the inner filters. The lid attached to the compressor had to be removed to change the oil.
¶ 4. The lid weighed approximately seventy to eighty pounds. Walker and Meyers lifted the lid off of the compressor. While lifting the lid and twisting around, Walker testified that he felt a "bite" in his back. According to Walker, his weight was on his right hand, side, and knee, and he had a preexisting low-back injury.
¶ 5. After Walker and Meyers lifted the lid, Walker carried it over a threshold; at that point he turned the lid in a different position and carried it against his chest down a step. He again felt a "pinch" in his back when he laid the lid on the concrete area. According to Walker, Meyers was on the opposite side of the compressor, and did not see Walker maneuvering the lid because his view was obstructed. Walker testified that he did not inform Meyers that he injured his back, since he had just returned to work.
¶ 6. Two Kinder Morgan supervisors, Kelly Pitts and Darwin Stillson, were making safety rounds and walked over to Walker's area as he was placing the lid on the ground. Stillson and Pitts briefly conversed with Walker and Meyers, but Walker did not mention the injury to them. That evening, Walker went home and lay on the floor, attempting to ease his back pain. His pain did not subside and actually worsened. The next day Walker noticed that his right foot was numb and his back was still hurting; however, he did not report the injury that day, though Kinder Morgan's policy was to report the injury immediately.
¶ 7. Two days after the injury, Walker noticed numbness in his foot and sharp pains in his back. Three days after the injury, Walker went to his work leader, James Rachal, and reported the injury. According to Walker, Rachal recommended that an injury report be made, and that he see his family physician. Walker's family physician recommended that he see Dr. Eric Graham, who performed his surgery in 2006.
¶ 8. After Dr. Graham examined Walker, surgery was recommended, but Kinder Morgan denied the claim. Walker filed a petition to controvert on June 10, 2015, alleging that on February 24, 2015, he received a work-related injury to his lower back and right leg while lifting a metal lid *896 at work. Kinder Morgan denied the compensability of the injury and did not pay workers' compensation benefits.
¶ 9. Following discovery by the parties, a hearing was held on January 13, 2016, at the Jackson County Courthouse in Pascagoula, Mississippi. The issue submitted to the administrative judge for resolution was whether a compensable work-related injury occurred on or about February 24, 2015. During the hearing, Walker admitted that he had prior back problems due to previous accidents. However, Walker testified that those problems were relieved by surgery and therapy.
¶ 10. At the hearing, Kinder Morgan introduced the depositions of Rachal, Pitts, Stillson, Meyers, Kevin Damazio, and Brian Gilliand. The depositions by Rachal, Pitts, Stillson, and Gilliand noted that Walker failed to report the injury the day that it happened, and Kinder Morgan's company policy was to report any injury immediately. Stillson and Gilliand also stated that Walker informed them that he was unsure if his injury was due to work or the car accident he was involved in a week prior. Damazio testified that later in the week, following Walker's injury, Walker engaged in horseplay at work and kicked his leg in the air to show his fellow employees how high it could reach.
¶ 11. Dr. Graham's testimony was also introduced during the hearing. Dr. Graham is an orthopedic spine surgeon who Walker had known for several years, because they attended high school together. According to Dr. Graham, Walker's spine problems began around 2005. In 2005, Walker suffered a work-related injury while working for a water and sewer company. Dr. Graham performed a two-level fusion on Walker's cervical spine at C5-6 and C6-7. Following the surgery, Walker reached maximum medical improvement; however, Dr. Graham assigned a twenty-eight percent overall impairment rating. Walker filed a workers' compensation injury and settled it. According to Dr. Graham, Walker was pain free in his neck by 2007.
¶ 12. Around January 31, 2008, Walker suffered his first lumbar (lower back) injury while lifting a chair. Two months later, Walker saw Dr. Graham for lower-back pain and, to a lesser extent, leg pain. At that time, Walker had a history of back pain and was seeing a chiropractor. Dr. Graham had no knowledge of how long Walker had been seeing a chiropractor. Therefore, he ordered an MRI scan to evaluate Walker's lumbar problems.
¶ 13. The MRI scan showed a bulge at the lubosacral joint (L5-S1) and a synovial (facet) cyst. Dr. Graham treated Walker with trigger point and facet injections. Walker saw Dr. Graham a year and a half later, still plagued with similar symptoms. Walker was also seeing another doctor and a pain-management specialist. Dr. Graham reviewed a CT scan and found a lytic lesion,[1] which could be developmental or congenital. Dr. Graham offered Walker a discogram[2] or possible lumbar spinal fusion surgery; however, Walker refused.
¶ 14. On January 31, 2011, Walker returned to Dr. Graham and wanted to proceed with the discogram. The discogram was performed by Dr. Joe Chen and was *897 positive, with back and leg pain at L5-S1. Dr. Graham advised Walker to either live with his pain or undergo lumbar-fusion surgery at L5-S1. Walker next saw Dr. Graham on January 19, 2012. Walker testified that the year following his last visit he continued to experience the same symptoms. Dr. Graham reviewed an MRI scan, which was different from the prior scans, because it showed more stress on the pedicles, which meant there was bone-on-bone wear.
¶ 15. Dr. Graham recommended lumbar-fusion surgery again, but Walker wanted to wait three months so that he could attempt to lose weight. Walker returned to Dr. Graham six months later, and his symptoms had not changed. Walker decided that he wanted to proceed with the surgery, but he never called the office to schedule the procedure. The next time Walker saw Dr. Graham was after the alleged injury at Kinder Morgan.
¶ 16. Dr. Graham testified that before the February 24, 2015 accident, ninety-five percent of Walker's pain was in his back and five percent was in his leg. After the accident, the pain was distributed fifty-fifty between Walker's back and legs. Moreover, before the accident Walker's pain was bilateral, but after the accident, the pain was concentrated on the right side. Before the accident, Walker's leg pain stopped at his knee; after the accident, it proceeded down his leg.
¶ 17. The administrative judge concluded that Walker suffered a compensable work-related injury. The judge found Walker to be a credible witness and that his testimony was neither unreasonable nor unbelievable, considering the facts of the case and the evidence as a whole. The administrative judge acknowledged that after the date of the alleged injury, an eye bolt was added to the top of the compressor to assist with lifting the lid.
¶ 18. Next, the administrative judge found Dr. Graham's opinion to be more compelling than the results of Kinder Morgan's physician. Dr. Graham opined that Walker was prone to lumbar problems/back reinjury due to his preexisting developmental condition and because of his substantial history of preexisting lower-back problems. Dr. Graham found that Walker's lifting incident while employed at Kinder Morgan necessitated surgery. The administrative judge acknowledged that Walker had preexisting conditions, but found that the February 24, 2015 incident aggravated Walker's preexisting injuries and culminated in him absolutely needing surgery.
¶ 19. The judge acknowledged that the doctor who performed the employer medical evaluation, Dr. Eric Amundson, opined that Walker did not injure his back while lifting the metal compressor lid on February 24, 2015. Dr. Amundson asserted the low-back and right-leg symptoms that Walker was experiencing were secondary to symptom magnification and/or preexisting symptomatic pathology at L5-S1.
¶ 20. However, the administrative judge found Dr. Graham's medical opinion to be more compelling than that of Dr. Amundson, since Dr. Graham was Walker's treating physician for many years. The administrative judge awarded Walker temporary total disability benefits in the amount of $463.59 weekly, until Walker reached maximum medical improvement. Walker was also awarded medical expenses, including those for his spinal surgery.
¶ 21. Kinder Morgan appealed the administrative judge's decision to the Commission. The Commission reversed the order of the administrative judge and dismissed Walker's petition for failure to prove a compensable workplace injury. The Commission found that the evidence *898 did not support a finding of causation required to establish the compensability of Walker's claim. The Commission found that the testimony of Walker's coworker did not support his allegations of sustaining a work-related injury. The Commission opined that Walker's failure to report his injury for three days without a valid reason likewise did not support Walker's allegations.
¶ 22. The Commission also found Dr. Amundson's testimony more compelling than Dr. Graham's. The Commission noted that Dr. Amundson examined Walker and reviewed all of his medical records, including the MRI scan following his car accident. In contrast, Dr. Graham derived his opinion ninety-five percent from Walker's medical history and five percent from Walker's MRI scans. The Commission noted that Dr. Graham did not review the MRI scan taken after Walker's car accident. As a result, the Commission concluded that Walker failed to establish the existence of a compensable injury, reversed the administrative judge's order, and dismissed Walker's claim. Walker appeals.
STANDARD OF REVIEW
¶ 23. "[R]eview of a decision of the Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights." Cook v. Home Depot , 81 So.3d 1041, 1044 (¶ 3) (Miss. 2012) (quoting Short v. Wilson Meat House LLC , 36 So.3d 1247, 1250 (¶ 17) (Miss. 2010) ). "Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, this Court may not reweigh the evidence before the Commission." Id. at 1044-45 (¶ 3).
¶ 24. This Court affords de novo review to the Commission's application of the law. Natchez Equip. Co. v. Gibbs , 623 So.2d 270, 273 (Miss. 1993). "The legal effect of the evidence [ ] and the ultimate conclusions drawn by [the Commission] from the facts ... are questions of law, especially where the facts are undisputed or the overwhelming evidence reflects them." Cent. Elec. Power Ass'n v. Hicks , 236 Miss. 378, 110 So.2d 351, 356 (1959). "[W]hen the agency has misapprehended a controlling legal principle, no deference is due, and our review is de novo." ABC Mfg. Corp. v. Doyle , 749 So.2d 43, 45 (¶ 10) (Miss. 1999) ; see also Gregg v. Natchez Trace Elec. Power Ass'n , 64 So.3d 473, 475-76 (¶ 9) (Miss. 2011).
DISCUSSION
¶ 25. Walker asserts two errors on appeal. First, he argues that the Commission arbitrarily and capriciously applied the facts to the law and ignored his uncontradicted testimony. Second, Walker asserts that the Commission ignored the testimony and opinion of Walker's treating physician, Dr. Graham, and denied the compensability of his claim solely due to the opinion of Dr. Amundson, who evaluated him once.
¶ 26. "[T]o establish a prima facie case of disability, a claimant must show by a fair preponderance of the evidence that (1) an accidental injury occurred (2) which arose out of and in the course of employment and (3) that the injury and claimed disability are causally connected." Harrison Cty. Bd. of Sup'rs v. Black , 127 So.3d 272, 275 (¶ 10) (Miss. Ct. App. 2013) (citing Hedge v. Leggett & Platt Inc. , 641 So.2d 9, 13 (Miss. 1994) ). "Once the claimant establishes a prima facie case of disability, the burden of proof shifts to the employer to rebut or refute the claimant's evidence." Id. (citing Thompson v. Wells-Lamont Corp. , 362 So.2d 638, 641 (Miss. 1978).
*899 I. Whether the Commission acted arbitrarily and capriciously in its application of the facts.
¶ 27. Walker argues that the evidence did not support the Commission's order. Walker asserts that the evidence that he sustained a compensable injury was uncontradicted. In support of his contention, Walker cites the administrative judge's finding that the lay and medical testimony supported Walker's claim of a work-related injury. On appeal, Walker reiterates that he felt "better than ever" when he returned to work after his February 11, 2015 automobile accident. Walker argues that he did not report his accident on the day that it occurred because he and Donte were "under the gun" to complete the project by the end of the day.
¶ 28. Walker also argues that he became aware that he had injured himself at work after noticing a new pain radiating down his leg the day after the accident. Walker argues that he presented credible uncontradicted testimony, and there were no material contradictions in his testimony during the compensability hearing. We disagree.
¶ 29. Six depositions of Kinder Morgan employees were submitted during the compensability hearing. Though four of the six merely reiterated Kinder Morgan's policy that injuries be reported immediately, the depositions of Gilliand and Stillson contradicted Walker's testimony. Walker submitted to the administrative judge that he was not in pain on the morning of the accident. However, according to the deposition testimony of Stillson and Gilliand, Walker was unsure whether the pain he had experienced on the day of the accident was due to a work-related injury or the automobile accident he was involved in a week prior. Moreover, Damazio's testimony that Walker was "horseplaying" in the shop and kicked his leg in the air to see how high it could reach also contradicts Walker's testimony that he was in an extensive amount of pain following the accident.
¶ 30. The Commission found that the greater weight of the evidence did not support the causation required to establish compensability. The Commission found that the testimony of Walker's coworkers was more compelling than Walker's testimony and that it contradicted Walker's evidence of a compensable claim. "The Commission is the trier and finder of facts in a compensation claim, the findings of the [administrative judge] to the contrary notwithstanding." Fought v. Stuart C. Irby Co. , 523 So.2d 314, 317 (Miss. 1988) (citing Vardaman S. Dunn, Mississippi Workers' Compensation § 284 (3d ed. 1982)). "If the Commission's decision and findings of fact are supported by substantial evidence, then we are bound by them." In re Dependents of Harbin, 958 So.2d 1260, 1262 (¶ 5) (Miss. Ct. App. 2007). Walker could not cite to any specific action of the Commission to illustrate that it acted arbitrarily or capaciously. He merely argues that the evidence he submitted was uncontradicted. We find no error in the Commission's findings.
II. Whether the Commission ignored the testimony of Walker's treating physician.
¶ 31. Walker argues that the Commission acted arbitrarily and capaciously by ignoring Dr. Graham's testimony in favor of Dr. Amundson's testimony. Walker asserts that the Commission was faced with a disagreement of medical opinions. Walker contends that he met his credibility burden through both his uncontradicted testimony and that of his treating orthopedic surgeon, Dr. Graham. Walker reiterates that Dr. Graham was his treating physician for many years. Walker also asserts that the administrative judge found *900 Dr. Graham's testimony to be more compelling than that of Dr. Amundson, who evaluated him once. Therefore, Walker argues that the Commission acted arbitrarily and capraciously in giving more weight to Dr. Amundson's testimony. We disagree.
¶ 32. The Commission found Dr. Amundson's testimony compelling. The Commission noted that Dr. Amundson found Walker's behavior to be exaggerated and his medical condition unchanged after evaluating his MRI's scans, including those that were taken on the day of his car accident. The Commission's order noted that Dr. Graham testified that he did not review Walker's medical records from the automobile accident and derived his recommendation for lumbar-fusion surgery ninety-five percent from Walker's history and five percent from the MRI scans. The evidence used to prove the causation must be credible medical evidence and not mere speculation. See Langford v. Southland Trucking LLC , 30 So.3d 1266, 1280 (¶ 52) (Miss. Ct. App. 2010).
¶ 33. We find that the Commission did not act arbitrarily and capriciously in reversing the order of the administrative judge and dismissing Walker's claim. Finding no error, we affirm.
¶ 34. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.

A lytic lesion is a soft spot that develops at birth or over time, particularly when the bone structure has been damaged. The lesion can extend from the inner bone to the outside and can be seen on a standard x-ray as a hole on the bone.

A discogram is an invasive diagnostic test that uses x-rays to examine the intervertebral discs of one's spine. A special dye is injected into the injured disc or series of discs. The dye makes the disc visible on a fluoroscope monitor and x-ray film.